**John A. BEGALA, Plaintiff–Appellant,**

v.

**PNC BANK, OHIO, NATIONAL ASSOCIATION, Defendant– Appellee.**

Nos. 97–3915, 97–4147.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 18, 1998.

Decided Dec. 28, 1998.

Paul M. De Marco (argued and briefed), Waite Schneider, Bayless & Chesley Co., L.P.A., Cincinnati, OH, for Plaintiff–Appellant.

Glenn V. Whitaker (argued and briefed), Phillip J. Smith (briefed), Vorys, Sater, Seymour & Pease, Cincinnati, OH, for Defendant–Appellee.

Before: KRUPANSKY, BOGGS, and DAUGHTREY, Circuit Judges.

DAUGHTREY, Circuit Judge.

The plaintiff, John Begala, appeals from the dismissal of his action under the Truth in Lending Act and the denial of his post-judgment motion to reopen the action in order to file an amended class action complaint. The district court found that the defendant, PNC Bank, was not required under the Act to make new disclosures when it offered Begala loan payment deferrals, known as "payment holidays," and therefore that Begala had failed to state claim upon which relief might be granted. The court also struck his Rule 60(b) motion for lack of jurisdiction. We conclude that the district court correctly determined that liability cannot be established under TILA, and we find no abuse of discretion in striking Begala's Rule 60(b) motion. We therefore affirm the decision of the district court.

### PROCEDURAL AND FACTUAL BACKGROUND

In November 1987, John Begala entered into a 60–month car loan with PNC's predecessor-in-interest. His monthly payment was $442.82. The original loan agreement did not mention the possibility of deferring monthly payments. Between May 1988 and May 1993, Begala received nine unsolicited letters from PNC offering one month extensions, or deferrals, of his loan, called "payment holidays." One such letter read:

PNC Bank would like to help you accumulate some extra cash during the vacation season by giving you an opportunity to postpone one loan payment.

Here's how it works. The authorization form attached below lists a loan extension fee which is the payment you make now in order to postpone your regular payment. Simply sign the authorization and forward it along with your extension fee payment. Your loan term will automatically be extended by the one payment you're postponing now.

That's all there is to it. This offer is good until July 31, 1993, so you can postpone your June or July payment.

If you'd like to take advantage of this offer, here's your chance. Remember, just sign and detach the authorization provided below and return it with your extension payment in the enclosed envelope. We must receive your authorization and extension payment prior to your regular payment date in the month during which you wish to postpone a payment.

The extension authorization form at the bottom of the letter states, "This is your authorization to extend my installment loan # [ ] one month beyond the present maturity. The extension fee is [ ]."

Begala responded all nine times to the payment holiday offers. The extension fees ranged up to $60 per extension, and over the course of the nine extensions, he paid more than $400 in extension fees. When, in May 1993, Begala attempted to make the final payment on his loan, he discovered that he owed not just a final payment of $442.82, but

also approximately $1,000 in interest that had accumulated as a result of the nine deferrals.

More than three years later, Begala filed a class action complaint against PNC, alleging that the bank had violated its duty under the Truth in Lending Act to disclose the fact that additional finance charges would be assessed due to the payment holidays, as well as the amount of such charges. PNC moved to dismiss the action, contending that it had no duty under TILA to make disclosures regarding the payment holiday program and, therefore, that Begala had failed to state a claim upon which relief could be granted. Acting on the defendant's motion, the court dismissed the entire action, finding that because TILA does not create a duty of disclosure when creditors offer payment holidays, Begala had failed to state a claim upon which relief could be granted. The court dismissed without prejudice a state law claim of usury and also denied the motion for class certification.

On appeal, Begala raises several arguments, but only one is dispositive of the case: whether the statute and regulations implementing TILA create a duty to disclose accurately the interest incurred in payment holidays.

## DISCUSSION
### Standard of Review

■■■ Because a motion under Rule 12(b)(6) tests whether a claim has been adequately stated in the complaint, dismissal under Rule 12(b)(6) is proper when, even taking all of plaintiff's alleged facts to be true, he can prove no set of facts that would entitle him to relief. *See American Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 355 (6th Cir.1990). We review a district court's grant of a 12(b)(6) motion *de novo*. *See Meador v. Cabinet for Human Resources*, 902 F.2d 474, 475 (6th Cir.1990). In considering the motion, we accept as true all factual allegations in the complaint. *See Nishiyama v. Dickson County*, 814 F.2d 277, 279 (6th Cir.1987) (en banc). Moreover, in TILA actions, we defer to the regulations interpreting the Act. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980). "Unless demonstrably irrational, Federal Reserve Board staff opin-ions construing the Act or Regulation should be dispositive...." *Id.*

### Analysis

■■■ The Truth in Lending Act, 15 U.S.C. § 1601, *et seq.,* was enacted to promote the informed use of credit by consumers by requiring meaningful disclosure of credit terms. *See Jones v. The TransOhio Sav. Ass'n,* 747 F.2d 1037, 1040 (6th Cir. 1984); 15 U.S.C. § 1601. We have repeatedly stated that TILA is a remedial statute and, therefore, should be given a broad, liberal construction in favor of the consumer. *See Jones,* 747 F.2d at 1040; *Flesher v. Household Finance Corp.,* 640 F.2d 861, 863 (6th Cir.1981) (per curiam). Indeed, TILA was designed to create a "system of private attorney generals [sic] to aid its enforcement," *Jones,* 747 F.2d at 1040, and strict compliance with the disclosure requirement is necessary. *See Purtle v. Eldridge Auto Sales,* 91 F.3d 797, 801 (6th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2411, 138 L.Ed.2d 177 (1997).

■■■ Neither party disputes that, under TILA, a creditor's principal disclosure obligations arise *before* the credit transaction is consummated. *See Rudisell v. Fifth Third Bank,* 622 F.2d 243, 246 (6th Cir.1980); 12 C.F.R. § 226.17(b)("The creditor shall make disclosures before consummation of the transaction."). In closed-end transactions such as Begala's car loan, the required disclosures under TILA are to be made as of the time that credit is extended, 15 U.S.C. § 1638(b), and it is as of that time that the adequacy and accuracy of the disclosures are measured. *See Bartholomew v. Northampton Nat'l Bank,* 584 F.2d 1288, 1296 (3rd Cir.1978). Thus, it is clear that any liability on the part of PNC for failure to disclosure the true costs of the payment holiday plan cannot arise from TILA's pre-consummation requirements; indeed, Begala does not claim that the pre-consummation disclosures he received were inaccurate or misleading.

■■■ Therefore, the question before us is whether the statute and its implementing regulations create any *post*-consummation duty of disclosure in payment holiday situations. Generally, subsequent events, includ-

ing agreements such as in this case, do not affect the validity of initial disclosures or require the creditor to make further disclosures:

> Effect of subsequent occurrence. If information disclosed in accordance with this part is subsequently rendered inaccurate as the result of any act, occurrence, or *agreement* subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of this part.

15 U.S.C. § 1634 (emphasis added). The regulations further clarify the narrow circumstances under which subsequent disclosures are required, as follows:

> (e) Effect of subsequent events. If a disclosure becomes inaccurate because of an event that occurs after the creditor delivers the required disclosures, the inaccuracy is not a violation of this regulation, although new disclosures may be required under paragraph (f) of this section, § 226.19, or § 226.20.

12 C.F.R. § 226.17(e). The exceptions referred to concern certain residential mortgage and variable rate transactions, 12 C.F.R. § 226.19, refinancings, assumptions, and variable rate adjustments, 12 C.F.R. § 226.20, and circumstances where early disclosures are rendered inaccurate prior to the date of consummation, 12 C.F.R. § 226.17(f), and are inapplicable to the case at hand. Begala attempts to construe the deferrals as refinancings, but the Official Staff Commentary specifically precludes this: "Changes in the terms of an existing obligation, *such as the deferral of individual installments*, will not constitute a refinancing unless accomplished by the cancellation of that obligation and the substitution of a new obligation." Official Staff Commentary to 12 C.F.R. § 226.20(a) at 397. Hence, Begala cannot argue that each deferral authorization resulted in the cancellation of his old obligation and the substitution of a new obligation, be-

cause it is the very operation of the old obligation—causing interest to accrue on the postponed payments at the rate of his loan—to which he objects.

There is little case law interpreting the "subsequent occurrence" provision, but at least one circuit court has been asked to consider the question of payment holiday programs. Interpreting § 1634, the Ninth Circuit assumed that disclosures are not required for loan deferrals:

> [O]nce disclosed, if the annual percentage rate is "rendered inaccurate as the result of any act, occurrence, or agreement subsequent to the delivery of the required disclosures ..." it is not a violation of the Act. 15 U.S.C. § 1634 (1970). *Otherwise, subsequent events such as late payment charges, Christmas deferrals or prepayment of the obligation, would each require a recomputation of the annual percentage rate. This result would be entirely unwieldy and impractical.*

*Bone v. Hibernia Bank,* 493 F.2d 135, 140–41 (9th Cir.1974) (emphasis added).

We agree with the analysis in *Bone.* TILA's disclosure requirements arise *before* a credit transaction is consummated, and Begala does not challenge the initial disclosures he received. No specific duty to make post-consummation disclosures arises under the statute or the regulations, and each payment deferral cannot be construed as a new credit transaction, triggering TILA's disclosure requirements [1]. The district court opinion properly found that "[l]iability under the Truth-in-Lending Act may not be established on the basis of Defendant's failure to make new disclosures when it offered a payment holiday option to plaintiff."

## CONCLUSION

For the reasons set out above, we **AFFIRM** the district court's order of dismissal

---

1. The situation presented to us today is easily distinguished from the activity discussed in *Travis v. Boulevard Bank, N.A.,* 880 F.Supp. 1226 (N.D.Ill.1995). In that case, the bank, without proper authorization, procured insurance against Travis's default and then charged Travis for the premium payments. Faced with a scenario in which the principal amount of a consumer's indebtedness was unilaterally increased by the lender, the district court correctly concluded that the insurance purchase "and the subsequent addition of the resulting premiums to Plaintiffs' existing indebtedness constituted a new credit transaction. Defendant's action involved augmenting Plaintiffs' existing finance charge with an additional finance charge for the resulting premiums. This transaction required new disclosures under TILA." *Id.* at 1229–30.

for failure to state a claim. Moreover, we find no abuse of discretion in the district court's decision to strike the plaintiff's Rule 60(b) motion, which was filed after the notice of appeal. Although a district court may indicate its inclination to grant such a motion, there is no requirement that the court do so.