RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0219A (6th Cir.)
File Name: 02a0219a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SHARON R. PFENNIG,
    *Plaintiff-Appellant,*

v.

HOUSEHOLD CREDIT
SERVICES, INC., and MBNA
AMERICA BANK, N.A.,
    *Defendants-Appellees.*

No. 00-4213

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 99-00815—Edmund A. Sargus, Jr., District Judge.

Argued: November 27, 2001

Decided and Filed: July 2, 2002

Before: CLAY and GILMAN, Circuit Judges; EDGAR,
Chief District Judge.*

_____

*The Honorable R. Allan Edgar, Chief United States District Judge
for the Eastern District of Tennessee, sitting by designation.

1

---

**COUNSEL**

**ARGUED:** Sylvia M. Antalis, MURRAY & MURRAY, Sandusky, Ohio, for Appellant.  William G. Porter II, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, Richard C. Pepperman II, SULLIVAN & CROMWELL, New York, New York, for Appellees. **ON BRIEF:** Sylvia M. Antalis, John T. Murray, MURRAY & MURRAY, Sandusky, Ohio, for Appellant.  William G. Porter II, John J. Todor, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, Richard C. Pepperman II, Sharon L. Nelles, SULLIVAN & CROMWELL, New York, New York, David W. Alexander, SQUIRE, SANDERS & DEMPSEY, Columbus, Ohio, for Appellees.

CLAY, J., delivered the opinion of the court, in which GILMAN, J., joined.  EDGAR, D. J. (pp. 19-22), delivered a separate opinion dissenting in part and concurring in part.

---

**AMENDED OPINION**

---

CLAY, Circuit Judge.  Plaintiff, Sharon R. Pfennig, appeals from the district court's September 1, 2000 order dismissing her complaint in which she seeks to bring a class action against Defendants, Household Credit Services, Inc. ("Household") and MBNA America Bank, N.A. ("MBNA"), for alleged violations of the federal Truth in Lending Act ("TILA" or  "Act"), 15 U.S.C. § 1601, *et seq*.  Plaintiff alleges that Defendants extended her credit and then charged her a fee for doing so without properly disclosing that fee as a finance charge as required by TILA.  The district court dismissed Plaintiff's complaint, determining that regulations promulgated by the Federal Reserve Board  ("FRB"), which exclude over-limit fees from the definition of "finance

majority in this particular case to reach its conclusion that Regulation Z is not a permissible interpretation of the TILA.

The majority's conclusion in this case effectively amends Regulation Z in this circuit. The national uniformity established by the Federal Reserve Board for consumer credit is thereby breached.[1] I do not think that there is a sufficient basis for this result. Of course, because the defendants relied on Regulation Z in good faith, I concur in the majority's conclusion in Part IV of its opinion that the defendants are entitled to immunity from civil liability under 15 U.S.C. § 1640(f).

I would affirm the decision of the district court in its entirety.

---

[1] In its footnote 5, the majority says that it's holding is "limited to those instances in which the creditor knowingly permits the credit card holder to exceed his or her credit limit." Presumably this means that credit card issuers must only disclose an over-limit fee when they have been made aware that an over-limit charge is pending approval, and they then permit the charge to go through. Thus some card issuers may be required to disclose under some circumstances, while others may not. This merely adds to lack of uniformity and confusion.

charges," barred her claims. We now **AFFIRM** in part**,** **REVERSE** in part**,** and **REMAND**.

## BACKGROUND

Plaintiff holds a credit card originally issued by an affiliate of Defendant Household in 1993, but in which MBNA acquired the interest in 1998, when MBNA bought Household's credit card portfolio. Defendants originally established Plaintiff's credit limit at $2,000, and subsequently allowed her to increase that limit when she attempted to make a purchase. That purchase pushed Plaintiff's credit limit over the originally agreed upon credit limit. Incident to extending Plaintiff's credit limit, Defendants assessed her an over-limit charge of $29.00 a month for every month her balance remained over the original limit. Plaintiff alleges that this charge was omitted from the finance charge calculation on her monthly statement, and instead was posted to her account as a new purchase or debit on which additional finance charges were calculated.

As indicated, Plaintiff seeks to bring a class action on behalf of all customers who hold or have held credit cards issued by Defendants. She alleges that Defendants' practice of imposing over-limit fees in the manner described above is pervasive. Plaintiff claims that Defendants routinely permit their customers to exceed their originally agreed upon credit limits upon request, and then impose upon them an over-limit fee for going over that limit. Plaintiff further alleges that the foregoing results in an exorbitant penalty that often amounts to an annual percentage rate of nearly sixty percent on credit extended over the limit. As a result of Defendants' alleged TILA violations, Plaintiff requests equitable relief, including a declaratory judgment that the over-limit fee is not properly disclosed pursuant to TILA (count I), and monetary damages (count II).

As further explained below, the district court dismissed Plaintiff's complaint on Defendants' motion for failure to

state a claim under Fed. R. Civ. P. 12(b)(6) because the administrative regulations interpreting TILA (hereinafter "Regulation Z") expressly exclude fees charged for exceeding a credit limit from the definition of the "finance charge."

## DISCUSSION

### I.

This Court reviews *de novo* a district court's dismissal of a complaint under Rule 12(b)(6). *Hammonds v. Norfolk S. Corp.*, 156 F.3d 701, 704 (6th Cir. 1998) (citing *Merriweather v. City of Memphis*, 107 F.3d 396, 398 (6th Cir. 1997)). On such a motion, the Court accepts as true well-pleaded facts alleged in the complaint, and will dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998) (citing *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996)). All allegations must be construed in the light most favorable to the plaintiff. *Mertik v. Blalock*, 983 F.2d 1353, 1355 (6th Cir. 1993).

### II.

Plaintiff argues that the plain language of TILA mandates that Defendants include as a finance charge the monthly fee imposed on Plaintiff's monthly statement for exceeding her credit limit. She admits that Regulation Z, promulgated by the FRB, has excluded from the definition of the term "finance charge" fees imposed for exceeding a credit limit. However, she argues that the regulation conflicts with the plain language of the statute, and in such cases, the Supreme Court has held that courts must ignore the regulation so as to give effect to the statute. She further contends that TILA is a consumer protection statute and must be construed liberally so as to prevent the type of action in which Defendants are now engaged.

interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). The Supreme Court has also specifically said that in interpreting the TILA, the Federal Reserve Board's opinions construing the Act should be dispositive unless "demonstrably irrational." *Ford Motor Credit Company v. Milhollin*, 444 U.S. 555, 565 (1980). This circuit has held that "in TILA actions, we defer to the regulations interpreting the Act." *Begala v. PNC Bank, Ohio, National Ass'n*, 163 F.3d 948, 950 (6th Cir. 1998).

The majority's interpretation of § 1605(a) might well be a reasonable one; but so is that of the Federal Reserve Board. Certainly it cannot be said that the Federal Reserve's exclusion of over-limit charges from the finance charge in Regulation Z is demonstrably irrational. The Federal Reserve merely filled in a blank left by Congress in the TILA, and analogized over-limit charges to unanticipated late payments and charges for delinquency or default. These other charges are clearly not a part of the finance charge because they are, as the district court concluded, post extension of credit occurrences. The same can be reasonably said about over-limit fees.

Since the district court granted judgment to Household and MBNA on a Rule 12(b)(6) motion to dismiss, those parties found it unnecessary to bring to the attention of the district court additional facts about the handling of credit cards. The existence of these facts was made evident by briefs filed by the Federal Reserve Board and other amici in support of a petition for rehearing, which the majority has denied. Since neither the district court nor this court has had the opportunity to consider important facts bearing on the ways in which credit is extended, it is all the more inappropriate for the

finds that, in accordance with the general statutory definition of finance charge, the defendant has charged a fee "incident to the extension of credit." The majority's rationale is that an over-limit fee is "imposed incident to the extension of credit" because after the plaintiff reached her credit limit, she in effect requested more credit by exceeding the limit; and by permitting her to exceed the limit and charging her a fee, the defendants imposed the fee "incident to the extension of credit." In other words the defendants knew that the plaintiff was making charges over her limit, before allowing her to do so.

There are two problems with this rationale. First, the plaintiff does not allege in her complaint that defendants had foreknowledge of the plaintiff's over-limit charges. The majority's factual conclusion appears to be based on contentions in plaintiff's brief. Since this case was decided on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), we are limited to reviewing the facts as they appear in the complaint. *Mars v. Buckeye Rural Elec. Co-op., Inc.*, 277 F.3d 873, 877 (6th Cir. 2002); *Rose v. Hartford Underwriters Inc. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). Second, the plaintiff's assertion in her brief that a credit card issuer "gets to make the decision as to whether or not [an over-limit] charge will be permitted to go through" may not, in all cases, be accurate. From our personal experience we know that many merchants check credit cards on-line before accepting customer charges. However, this may not be true in all cases; and, of course, the TILA and Regulation Z apply to all consumer credit transactions, not just those of the plaintiff.

We are admonished by the Supreme Court that:

When a court reviews an agency's construction of the statute which it administers, . . . [and where a] court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute, as would be necessary in the absence of an administrative

Defendants contend that the district court properly dismissed Plaintiff's complaint because Regulation Z excludes over-limit fees from the definition of finance charge. They argue that Regulation Z's exclusion of over-limit fees from the definition of the finance charge is rationally based and not contrary to TILA, and that the Supreme Court and this Court have stressed that courts should defer to the FRB's interpretations of TILA. Finally, Defendants claim that they acted in good faith compliance with Regulation Z when they failed to disclose the over-limit fee as a finance charge, and that pursuant to 15 U.S.C. § 1640(f), they are therefore immune from civil liability in the instant action.

### III.

The purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare . . . the various credit terms available to him and avoid the uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559 (1989) (explaining that TILA's purpose is to assure "meaningful disclosure of credit terms to consumers"); *Begala v. Ohio, Nat'l Ass'n*, 163 F.3d 948, 950 (6th Cir. 1999) (holding that TILA "was enacted to promote the informed use of credit by consumers by requiring meaningful disclosure of credit terms") (citation omitted). Because of TILA's purpose of protecting consumers in credit transactions, this Court has held that the statute must be construed liberally in the consumer's favor. *See Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1040 (6th Cir. 1984) ("TILA is a remedial statute and should be construed liberally in favor of the consumer.") (citations omitted).

TILA, however, is not exhaustive. Congress delegated to the FRB the authority "to elaborate and expand the legal framework governing the commerce in credit." *Milhollin*, 444 U.S. at 567 ("Congress has specifically designated the Federal Reserve Board . . . as the primary source for

interpretation and application of the truth-in-lending law.”); *see also* 15 U.S.C. § 1604(a) (explaining that the FRB “shall prescribe regulations to carry out the purposes of this subchapter”).  The Supreme Court has recognized that TILA is a highly technical act and that deference should be given to the FRB’s interpretation of the Act as long as such interpretations are not irrational. *Milhollin*, 444 U.S. at 568.  In explaining the deference that courts should afford to the FRB’s interpretation of TILA, the Court stated:

> wholly apart from jurisprudential considerations or congressional intent, deference to the . . . [FRB] is compelled by necessity; a court that tries to chart a true course to the Act’s purpose embarks upon a voyage without compass when it disregards the agency’s views. The concept of “meaningful disclosure” that animates TILA . . . cannot be applied in the abstract. *Meaningful* disclosure does not mean *more* disclosure.  Rather, it describes a balance between “competing considerations of complete disclosure . . . and the need to avoid . . . [informational overload.]”

*Id*. (italics in the original).  This Court also has stated that “in TILA actions, . . . it will defer to the regulations interpreting the Act.” *Begala,* 163 F.3d at 950 (citing *Milhollin*, 444 U.S. at 565).    However, while the FRB has been given broad authority in prescribing regulations to carry out the purposes of TILA, this authority is confined to efforts to “effectuate the purpose of [the Act], to prevent circumvention or evasion thereof, or to facilitate compliance therewith.”  15 U.S.C. § 1604(a).  Thus, the FRB’s authority is not without limits. *See e.g., Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219 (1981) (holding that courts need only defer to FRB regulations that are not repugnant to TILA); *Consumers Union of the U.S., Inc. v. Fed. Reserve Bd.*, 938 F.2d 266, 272-74 (D.C. Cir. 1991) (holding that despite authority § 1604(a) grants to the FRB, remand was necessary for clarification of the rationality of regulations that conflicted

---

## DISSENTING IN PART, CONCURRING IN PART

---

EDGAR, Chief District Judge, dissenting in part, concurring in part.  Because I do not think that the language of the Truth in Lending Act (“TILA”)  necessarily warrants the inclusion of an over-limit fee in the finance charge, I dissent from Part III of the majority opinion.

15 U.S.C. § 1605(a) generally defines a finance charge as follows:

> Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit.

The statute then specifies some examples of types of charges that must be included as a part of the finance charge disclosed to consumers.  Regulation Z, promulgated by the Federal Reserve Board to implement the TILA, fleshes out in considerable detail what is, and what is not, to be included within the finance charge.  As the majority points out, Regulation Z clearly *excludes* from the definition of finance charge “[c]harges for actual unanticipated late payment, for *exceeding a credit limit,* or for delinquency, default, or a similar occurrence.”  12 C.F.R. § 226.4(c)(2) (emphasis supplied).

The majority concludes, contrary to the Federal Reserve Board, that an over-limit fee “falls squarely within the statutory definition of a finance charge . . . .  There is no ambiguity.”  I respectfully disagree.  Over-limit fees are nowhere mentioned in § 1605(a).  The majority nonetheless

imposed for exceeding her credit limit. We therefore affirm the dismissal of count II of Plaintiff's complaint to the extent she seeks monetary damages.[6]

### CONCLUSION

The district court erred in failing to construe TILA liberally in Plaintiff's favor and in concluding that the fee assessed Plaintiff in this case resulted from a unilateral breach on Plaintiffs' part when she exceeded her credit limit. Construing the allegations in Plaintiff's complaint in her favor, the over-limit fee was imposed incident to the extension of credit that Defendants agreed to grant Plaintiff, and therefore falls squarely within the statutory definition of the "finance charge." Nevertheless, Defendants undisputedly relied on the plain language of Regulation Z, which, although it conflicts with the plain language of TILA, expressly excludes fees charged for exceeding a credit limit from the definition of the "finance charge." Thus, pursuant to TILA, Defendants may not be held liable for damages for such omission; however, Plaintiff may proceed with her claim against Defendants for equitable relief upon remand. For the forgoing reasons, we **AFFIRM in part, REVERSE in part**, and **REMAND** the matter to the district court.

---

[6]Plaintiff is in no way prejudiced by our decision. Indeed, in her reply brief she states that Defendants' good faith defense should not bar her claims inasmuch as she not only seeks monetary but also equitable relief. During oral arguments, her counsel reasserted this position. However, by holding that on the facts of this case, it is beyond cavil that Defendants complied with Regulation Z and pursuant to 15 U.S.C. § 1640(f) should be afforded immunity from civil damages, we in no way imply that in all cases where a party arguably or seemingly has complied with Regulation Z, he is entitled to the benefits of this statutory defense. *See e.g., Cox*, 751 F.2d at 825 (explaining that § 1640(f) provides no protection to a creditor who honestly but mistakenly interprets Regulation Z). (citations omitted). We need not decide at this time whether other instances may arise where reliance on § 1640(f)'s good faith conformance defense would be unavailing.

with TILA disclosure requirements regarding home equity loan promotional discount rates and repayment options).

Section 1605(a) defines "finance charge" as follows:

> Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit.

15 U.S.C. §1605(a). Similar to TILA, Regulation Z defines "finance charge" as "the cost of consumer credit," including "any charge payable directly or indirectly by the consumer" and imposed by the creditor as a result of the extension of credit. 12 C.F.R. § 226.4(a) (2001). Regulation Z excludes from this definition of finance charge "[c]harges for actual unanticipated late payment, for exceeding a credit limit, or for delinquency, default, or a similar occurrence." 12 C.F.R. § 226.4(c)(2).[1]

Relying on *Milhollin*, the district court found that it was bound to give deference to the FRB's interpretation of the term finance charge, and dismissed Plaintiff's complaint because of Regulation Z's exclusion of over-limit fees from the definition of finance charge. The district court noted that all the categories of fees excluded from the definition of finance charge under § 226.4(c)(2) arise when the terms under

---

[1]Prior to 1981, Regulation Z did not exclude charges for exceeding a credit limit from the term "finance charge." The FRB amended the regulation after Congress passed the Truth In Lending Simplification Act, Pub. L. No. 96-221, 94 Stat. 168, 168-186 (1980). *See* 35 Mass. Prac. Consumer Rights and Remedies § 161 (West 2000); Final Rule, 46 Fed. Reg. 20848, 20855 (April 7, 1981) ("[P]aragraph (c)(2) [of the current regulation] corresponds to § 226.4(c) of the [former] regulation, but adds one item to the list. The revised regulation specifically excludes charges for exceeding a credit limit from the finance charge.").

which the credit was extended have been breached by the borrower. The district court determined that "Plaintiff seeks a liberal interpretation of TILA, notwithstanding the plain language of Regulation Z." It concluded that the FRB "rationally" excluded fees for exceeding a credit limit from the definition of "finance charge" because such fees are "charges for past credit extension events that were not agreed to by the parties." According to the district court, no agreement was reached by the parties regarding customers "unilaterally exceeding their credit limit." Thus, it held that the FRB rationally had determined that because fees such as the one Plaintiff was charged in this case were only assessed where the customer breached the original terms of the credit agreement, any fees imposed incident to that breach could not be construed as finance charges.

Defendants argue that the district court was correct and that this Court must uphold the FRB's interpretation of Regulation Z because it is "rationally based." Just as the district court found, Defendants contend that the over-limit fee and all other fees excluded from the statutory definition of "finance charge" under § 226.4(c)(2) share a "common theme." Relying on language from the district court's opinion, Defendants claim,

> All of these post-credit extension occurrences are done in violation of the agreed upon terms upon which the credit was extended. Such charges are never imposed upon a borrower who simply follows the terms of the agreement. The Federal Reserve Board rationally determined that these charges, for acts amounting to breaches of the agreed upon credit extension, are not finance charges.

Defendant's Br. at 14.

We disagree with Defendants and the district court for several reasons. First, as explained above, we have held that TILA, as a remedial statute, must be given a liberal interpretation in favor of consumers in order to protect them

we exercise our discretion to entertain their argument although it was not passed upon below.

On its face, Regulation Z expressly states that charges imposed for exceeding credit limits are excluded from the "finance charge." *See* 12 C.F.R. § 226.4(c)(2). Even assuming all allegations in Plaintiff's complaint are true and construing those allegations in the light most favorable to Plaintiff, it is undisputed that the fee at issue in this case was imposed for "exceeding a credit limit." Consequently, even if the statute required Defendants to disclose this fee as a finance charge, unequivocally Regulation Z did not. *See* 15 U.S.C. § 1640(f) (no liability for "any act done or omitted in good faith in conformity with" a FRB regulation); *Basham v. Fin. Am. Corp.*, 583 F.2d 918, 922-23 (7th Cir. 1978) (affirming dismissal and/or grant of summary judgment in favor of defendants and explaining that because defendants undisputedly complied with Regulation Z, although the Regulation conflicted with disclosure requirements under TILA, they could not, pursuant to § 1640(f), be held civilly liable for their failure to follow TILA); *see also* 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 1277 at 468 (2d ed. 1990) (explaining that although general rule prevents asserting affirmative defense on a motion to dismiss, where defense is plain on its face, courts generally allow it) (footnote citations omitted). In addition, Plaintiff has not pointed to any disputed factual issue regarding whether Defendants acted in good faith by relying on the exclusionary provisions in Regulation Z. *Cf. Leon v. Washington Mut. Bank, N.A.*, 164 F. Supp. 2d 1034, 1039 (N.D. Ill. 2001) (noting that contrary to defendant's position that language contained in Rider created only an incidental interest obviating need for disclosure under TILA, two other federal courts previously had held that exact language created a security interest which did require disclosure). Based upon the undisputed facts of this case, 15 U.S.C. § 1640(f) applies, and Defendants are entitled to immunity from civil liability for failing to disclose as part of the finance charge on Plaintiff's monthly statements the fee

she seeks equitable relief, which is unaffected by Defendants' good faith reliance defense. *See* 15 U.S.C. § 1640(f) (relieving creditor/lender acting in good faith from liability.)

Although the district court did not expressly state in its opinion why it failed to consider Defendants' good faith argument, we note that district courts adhere to the general "well-settled" rule that "a party may not raise an issue for the first time in a reply brief." *See e.g., Books A Million, Inc. v. H & N Enters., Inc.*, 140 F. Supp. 2d 846, 859 (S.D. Ohio 2001) (citing *Aetna Cas. and Sur. Co. v. Leahey Const. Co., Inc.*, 219 F.3d 519, 545 (6th Cir. 2000)). The courts of appeal typically refrain from considering issues not passed upon by the lower courts. *See Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross and Blue Shield Ass'n*, 110 F.3d 318, 335 (6th Cir. 1997). That rule, however, is not inflexible. As we have explained:

> [t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases . . . Certainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, *as where the proper resolution is beyond any doubt*, . . . or where "injustice might otherwise result." Similarly, the Ninth Circuit has held . . .[that an appellate court has] discretion to decide whether to address an issue that the district court did not reach if the question is a purely legal one and the record has been fully developed prior to appeal; in deciding whether to exercise this discretion we should consider whether the resolution of the issue is clear and whether injustice might otherwise result.

*Id*. (citations omitted and emphasis added).

Because we believe that the issue regarding Defendants' good faith compliance with Regulation Z is clear in this case,

in credit transactions. *See Begala,* 163 F.3d at 950; *Jones,* 747 F.2d at 1040. Thus, TILA must be interpreted liberally in Plaintiff's favor in the instant case. Further, despite the language in § 226.4(c)(2) of Regulation Z, we believe the fee imposed in this case falls squarely within the statutory definition of a finance charge.

It is rudimentary that "the starting point for interpreting a statute is the language of the statute itself." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). "Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Id*.; *see also Bradley v. Austin*, 841 F.2d 1288, 1293 (6th Cir. 1988) (explaining that "[i]n determining the meaning of legislation, we must first look to the plain language of the statute itself"). "The ordinary meaning of the words used are presumed to express congressional purposes . . . ." *First Nat'l Bank of Council Bluffs v. Office of the Comptroller of the Currency*, 956 F.2d 1456, 1462-63 (8th Cir. 1992) (citation omitted). As stated previously, TILA defines the finance charge as the sum of *"all charges"* paid by the person to whom credit is extended and assessed by the creditor "as an incident to the extension of credit." 15 U.S.C. § 1605(a) (emphasis added). Plaintiff alleges that Defendants imposed the $29.00 over-limit fee after she requested and was granted additional credit. Had Defendants not granted Plaintiff's request for additional credit, which resulted in her exceeding her credit limit, they would not have imposed the over-limit fee. Thus, under a plain reading of § 1605(a) and the general rules of statutory interpretation, the $29.00 fee was imposed incident to the extension of credit to Plaintiff, and pursuant to TILA, Defendants were obligated to disclose the fee as a finance charge on her monthly statement. *See* 15 U.S.C. § 1638(a)(3) (listing the finance charge as one of the required disclosures by a creditor); 12 C.F.R. § 226.7(f) (requiring amount of finance charge to be listed on periodic statement).

Defendants fail to argue that the $29.00 fee was not imposed incident to the extension of credit, but instead vehemently contend that this Court must defer to Regulation Z.[2] We disagree. "[W]e defer to an agency's reasonable

---

[2]Defendants and several amici filed petitions for rehearing and suggestion for rehearing *en banc* in this case. The amici, including various industry organizations, challenge our understanding of the actual operation of the credit card industry, and in doing so, raise numerous factual issues not in the record. For instance, they raise the issue of why and when credit card issuers impose over-limit fees in the manner in which they do. We reject these arguments for two reasons. First, the particular factual issues the amici raise regarding the actual workings of the industry were never raised below and are not in the record. As a general rule, "[w]hile an amicus may offer assistance in resolving issues properly before a court, it may not raise additional issues or arguments not raised by the parties." *Cellnet Communications v. FCC*, 149 F.3d 429, 443 (6th Cir. 1998) (citations omitted). Moreover, even had Defendants themselves raised these additional factual issues, we could not consider them on a petition for rehearing. *See White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990) (noting that this Court reviews "the case presented to the district court rather than a better case fashioned after the district court's order"); *see also Blakely v. United States*, 276 F.3d 853, 865 n.5 (6th Cir. 2002) (noting that Court would not consider evidence presented in support of the plaintiff's claim because the evidence had not been presented to the district court). Second, the arguments fail on the merits. The Federal Reserve Board (FRB) concedes in its amicus filing that there might be instances where a creditor imposes a low credit limit and routinely allows consumers to charge above that limit even after over-limit fees have been assessed. In such instances, the FRB acknowledges that the over-limit fee actually becomes an anticipated cost of the credit extension and is therefore a finance charge. In the instant case, Defendants fail to challenge Plaintiff's allegations that Defendants knowingly and routinely permit their credit-card customers to exceed their agreed upon credit limits, and then impose over-limit fees for doing so. In deciding a motion to dismiss, pursuant to Rule 12(b)(6), we must accept these allegations as true and construe them in Plaintiff's favor. *Bibbo,* 151 F.3d at 561; *Mertik,* 983 F.2d at 1355. Because we are barred from a procedural standpoint from considering the new factual issues the amici seek to bring to our attention, we deny the petitions for rehearing. It should be emphasized that while this opinion holds that Plaintiff has stated a cause of action based on the allegations in her complaint, Defendants may seek to establish on remand that Plaintiff's allegations have no factual basis and that the fees at issue in this litigation

---

## IV.

Defendants argue that even if this Court "invalidate[s] the provision of Regulation Z at issue here," they are entitled to the good faith immunity defense of § 1640(f). In pertinent part, 15 U.S.C. § 1640(f) provides,

> No provision of this section, . . . imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board . . . notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded or determined by judicial or other authority to be invalid for any reason.

*Id.* "This defense is available to a creditor only if he acts 'in conformity' with certain official interpretations of the Truth in Lending Act." *Cox v. First Nat'l Bank of Cincinnati*, 751 F.2d 815, 825 (6th Cir. 1985). Defendants contend that Plaintiff fails to allege that they did not act in good faith conformance with Regulation Z. Thus, Defendants assert that they are entitled to immunity under 15 U.S.C. § 1640(f). Plaintiff claims that this Court cannot consider this matter because Defendants raised it for the first time in their reply brief before the district court, which did not consider this argument. Plaintiff also contends that this Court should not entertain this argument because it raises factual issues, the resolution of which is inappropriate on the current motion. Plaintiff further argues that in addition to monetary damages,

---

decisions, such a hypothetical scenario is not before us. Plaintiff has alleged in her complaint that Defendants routinely allow consumers to exceed their applicable credit limits. *Id.* Thus, she has alleged that the ultimate decision squarely rests in the hands of Defendants. Contrary to the dissent's contention, our holding is of course limited to those instances in which the creditor knowingly permits the credit card holder to exceed his or her credit limit and then imposes a fee incident to the extension of that credit.

late payment, the lender is placed in a position of having *unexpectedly* to bear the cost of the borrower's tardiness. We find persuasive Plaintiff's argument that in such instances, "the lender is arguably at risk for failing to meet its own obligations if its customers are not meeting theirs, [and] the lender [should certainly be allowed to] impose a late fee or default fee to account for this assumed risk." Plaintiff's Br. at 14. However, the scenario is entirely different where, as here, the borrower has reached her credit limit, requests more credit, and the lender agrees to that extension of extra credit, but assesses a fee as a result. In such an instance, the fee clearly is imposed incident to the extension of credit. *See* 15 U.S.C. § 1605(a).

TILA states that the amount of the finance charge equals the sum of all charges payable by one to whom credit is extended, incident to the extension of that credit. 15 U.S.C. § 1605(a). Defendants charged Plaintiff a $29.00 over-limit fee after they agreed to extend her additional credit, and pursuant to TILA, that fee must be disclosed as a finance charge. 15 U.S.C. §§ 1605(a), 1638(a)(3). Further, to the extent TILA and Regulation Z conflict in this regard, the unambiguous language of TILA controls.[5]

---

[5]The dissent contends that Part III of the majority opinion's rationale is problematic for two reasons: (1) Plaintiff failed to allege that Defendants had foreknowledge of her over-limit charges, and (2) credit card issuers, such as Defendants, may not in all cases decide whether over-limit charges "will be permitted to go through." The first assertion is incorrect and the second is irrelevant, in light of our holding. Plaintiff alleges that Defendants routinely permit consumers to exceed their credit limits and did so in this case as to "each and every putative class member." (J.A. at 7, ¶¶ 7-8.) She further alleges that Defendants permitted all purported class members to make the charges that allowed them to exceed their applicable credit limits. (J.A. at 13, ¶¶ 34-35.) Thus, construing the allegations in the complaint in the light most favorable to Plaintiff, she clearly alleges that Defendants had foreknowledge of her over-limit charges. In addition, these allegations support Plaintiff's argument that Defendants make the decision as to whether over-limit charges "will be permitted to go through." While the dissent claims credit card issuers "may not, in all cases" make such

interpretation of a statute it administers unless the intent of Congress is clear." *Hamama v. I.N.S.,* 78 F.3d 233, 239 (6th Cir. 1996) (citation and internal quotation marks omitted). Where a statute and an agency regulation regarding the same matters conflict, courts must defer to the statute. *See e.g., K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (explaining that to determine whether a regulation conflicts with a statute, the starting point is the statute itself; if the statute is clear and unambiguous the matter is over and the courts and agency must give effect to Congressional intent). "In ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *Id*.; *United States v. Butler*, 207 F.3d 839, 847 (6th Cir. 2000) (same). As we have explained, TILA is a remedial statute that must be construed broadly in the consumer's favor. *Begala*, 163 F.3d at 950. The over-limit fee Defendants impose falls squarely within the statutory definition of a finance charge. *See* 15 U.S.C. § 1605(a). There is no ambiguity. Further, as is evident from other provisions of the Act, "[t]he disclosure of the finance charge is at the heart of" TILA. Elizabeth Renuart & Kathleen E. Keest, National Consumer Law Center, *Truth in Lending* § 3.1.1, at 81 (4th ed. 1999). The finance charge is intended to provide an accurate price tag for credit, and TILA demands that it be disclosed more conspicuously than other items. *Id*. (footnote citations omitted); *see also* 15 U.S.C. § 1632(a) (listing finance charge as one of few items that must be "disclosed *more conspicuously* than other items, data, or information . . .") (emphasis added); 15 U.S.C. § 1638(a)(3) (including the finance charge as one of the required disclosures). "Seeing the cold, hard figures [i.e., the finance charge] helps consumers to determine whether to use credit or not," as high credit costs encourage restraint. Renuart & Keest, *supra*, § 3.1.1 at 81. To that end, the failure to accurately represent the finance charge contravenes TILA's statutory goal of

---

do not violate TILA.

providing adequate disclosure in order that the consumer will knowledgeably be able to compare credit options and "avoid the uninformed use of credit."[3] 15 U.S.C. § 1601(a); *Jones*, 747 F.2d at 1040. Thus, considering the language in § 1605(a) defining the finance charge and the language and purpose of TILA as a whole, Regulation Z's exclusion of over-limit fees, such as those imposed in this case, from the "finance charge" conflicts with the express language of TILA. In such instances, the regulation cannot stand. *Cartier*, 486 U.S. at 291.

We also disagree with the district court's finding that the $29.00 fee was imposed because Plaintiff "unilaterally exceeded her credit limit." Plaintiff alleges in her complaint that Defendants permitted her to exceed her original credit limit. She further contends in her brief that the additional credit was extended to allow her to make new purchases. Accepting these facts as true, Plaintiff did not unilaterally exceed her credit limit. Rather, she requested additional credit in order to make purchases. Defendants could have declined her request. Instead, they granted it, and then charged her a $29.00 fee for doing so. Plaintiff would have breached the terms of her original credit agreement but for Defendants' willingness to renegotiate the agreement. Because Defendants knowingly allowed Plaintiff to exceed her credit limit and charged her a fee incident to this extension of credit, that fee is by definition a finance charge. *See* 15 U.S.C. § 1605(a).

---

[3]In addition, Plaintiff not only alleges that Defendants permit their customers to exceed their credit limits by extending additional credit to them and imposing upon them a fee for doing so, but also that Defendants "systematically" post this fee on their customers' monthly billing statements as a new purchase, on which additional finance charges are calculated. (J.A. at 7, 13 ¶¶ 9, 37). Plaintiff essentially alleges that she is incurring a double penalty, as she is assessed an over-limit fee as a penalty, and then must pay finance charges on that fee. In light of our holding, we need not address this issue.

Moreover, despite Defendants' arguments to the contrary, we see a vast distinction between the over-limit charge at issue in this case and the other charges listed in 12 C.F.R. § 226.4(c)(2). Defendants cite several cases in which courts have held that because fees imposed for unanticipated late payment, default, or delinquency are excluded from the definition of finance charges under § 226.4(c)(2), they are not finance charges within the meaning of TILA. *See e.g., United States v. Citrin*, 972 F.2d 1044, 1051 (9th Cir. 1992) (holding that government did not breach TILA because it failed to "clearly inform" a scholarship recipient of the damages due upon his default; under 12 C.F.R. § 226.4(c)(2) charges for default are not finance charges); *In re Rothenberg*, 203 B.R. 827, 836 (D.C. Bankr. 1996) (same). None of the cases cited by Defendants involve the type of over-limit fee at issue in this case.[4] Further, in situations where the consumer is in default, is delinquent in payment, or submits an unanticipated

---

[4]Defendants also cite to unpublished decisions to support their argument. *See Sims v. Union Planters Bank of Northeast Miss., N.A*, No. 3:96CV206-B-A, 1997 WL 170309, at *2 (N.D. Miss. Feb. 27, 1997) (dismissing plaintiff's complaint and holding that $5 fee bank charged because plaintiff's account was overdrawn was not an undisclosed finance charge because it was not a finance charge under Regulation Z); *Strutman v. Chem. Bank*, No. 94 Civ. 5013, 1996 WL 539845, at *3 (S.D.N.Y. Sept. 24, 1996) (holding that $275 fee imposed by bank to deliver security to plaintiffs' new lender was not a finance charge because the fee was not assessed as an incident to the extension of credit). Neither of these cases involve fees for exceeding a credit limit under § 226(c)(2). Further, *Strutman* is easily distinguishable because the court in that case expressly held, and the facts of that case show, that the fee imposed was not incident to the extension of credit. *Strutman*, 1996 WL 5329845, at *3. The same holds true for *Hahn v. Hank's Ambulance Serv. Inc.*, 787 F.2d 543 (11th Cir. 1986), also cited by Defendants, where the court found persuasive the reasoning that the services rendered by an ambulance company did not result in extending credit. *Id.* at 544. In the instant case, it is unquestionable that the fee was imposed because Plaintiff was extended additional credit which caused her to exceed her originally agreed upon credit limit. In any event, the unpublished opinions cited by Defendants do not serve as binding authority on this Court. *See e.g., United States v. Barnes*, 278 F.3d 644, 648 n.1 (6th Cir. 2002).