UNITED FOOD AND COMMERCIAL
WORKERS, LOCAL 17A,
Plaintiff–Appellant,

v.

FRESH MARK; Fresh Mark, Inc.,
Health and Medical Benefits Plan;
Fresh Mark, Inc. Plan Administrator
for the Health and Medical Benefits
Plan, Defendants–Appellees.

No. 02–3146.

United States Court of Appeals,
Sixth Circuit.

Nov. 6, 2003.

Kathleen O. Tatarsky, Brian L. Zimmerman, Canton, OH, for Plaintiff-Appellant.

Kenneth B. Stark, Barry Y. Freeman, Duvin, Cahn & Hutton, Cleveland, OH, for Defendants-Appellees.

Before BOGGS, Chief Judge; NORRIS and CLAY, Circuit Judges.

CLAY, Circuit Judge.

Plaintiff, United Food & Commercial Workers, Local 17A, appeals a January 3, 2002 order dismissing Plaintiff's suit for failure to state a claim. Plaintiff filed this action pursuant to the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, state law, and the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.*, against Defendants Fresh Mark and two affiliated entities (Fresh Mark, Inc., Health and Medical Benefits Plan, and Fresh Mark, Inc. Plan Administrator for the Health and Medical Benefits Plan). For the reasons set forth below, we **AFFIRM** the district court.

## BACKGROUND

### *Procedural History*

On August 17, 2001, Plaintiff filed a complaint against Defendant alleging three separate counts: (1) a claim for breach of contract pursuant to § 301 of the LMRA; (2) a state-law unjust enrichment claim based on the same alleged breach of contract; and (3) a claim for ERISA violation of § 502(a)(1)(B), (a)(3).

Defendant moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). Defendant made three arguments: (1) Plaintiff's failure to exhaust the mandatory grievance and arbitration process barred the § 301 claim; (2) section 301 of the LMRA preempted the state law unjust enrichment claim; and (3) Plaintiff lacked standing to bring an ERISA claim on its retirees' behalf.

Attached to the motion to dismiss, Defendant included an affidavit from its Director of Human Resources, Mark Sullivan. Plaintiff filed a response that opposed Defendant's motion, moved to strike the affidavit, and requested permission to conduct limited discovery. The court entered an order striking the affidavit, thus limiting the information before it to that contained in the pleadings.

In a January 3, 2002 order, the district court granted the motion to dismiss. According to the court, the parties' dispute concerned the terms and application of the CBA and, as such, Plaintiff was required to exhaust the contract's grievance procedure before filing suit. The district court also concluded that Plaintiffs lacked standing to bring an ERISA claim on behalf of its members.

On January 16, 2002, Plaintiff filed a motion to vacate the district court's judgment pursuant to Fed.R.Civ.P. 60(b). On January 31, 2002, Plaintiff filed a notice of

appeal of the district court's January 3, 2002 dismissal of Plaintiff's complaint. In a February 11, 2002 order, the district court denied the motion to vacate.

### Substantive Facts

Defendant[1] engages in the meat processing and packaging business. Plaintiff represents Defendant's production employees. The parties entered into successive CBAs in October of 1994 and October of 1998.

In 1994, Plaintiff and Defendant negotiated a prescription drug program applicable to current employees and those who retired during the term of the 1994 CBA. The CBA described the prescription drug program as follows:

(a) $1.00 deductible on generic and brand [drugs] without generic equivalent.

(b) Brand drugs with a generic equivalent will be reimbursed at the generic equivalent costs.

(c) When an employee or dependent exceeds the $400 level (individual) in a calendar year, he/she will be enrolled in a Managed Care Program that waives (a) and (b). The Managed Care Program will be administered by a mutually agreed upon person (Ombudsperson).

(d) Effective 1/1/96—Employees will pay prescription costs that exceed the CAP. The CAP will be determined by averaging the total costs for the years 1993, 1994 & 1995 and by adding 10%. For costs exceeding the CAP, premiums will be at a maximum of $5.00 per month per employee and those employees who retire under this Agreement. This maximum will be effective for 1996

& 1997. Beginning in 1998 the $5.00 per month maximum will be removed and the employees will be responsible for all costs exceeding the CAP.

(e) The Company & Union will develop a Managed Care Program sufficient to implement (c) above.

(J.A. at 9, 20.) Essentially, this agreement provided that employees with prescription expenses that exceeded a deductible ($400) would join a managed care program that the parties would create. Furthermore, effective January 1, 1996, employees covered by this agreement would pay any prescription costs that exceeded 110% of the average total prescription costs for years 1993, 1994 and 1995 (the "CAP"). The parties renewed these terms in the CBA signed in October of 1998.

In January of 1999, Defendant notified retirees that, beginning March 1, 1999, Defendant would charge them a prescription drug premium of $24.50 per month. In March of 2001, Defendant increased the premium to $50.98 per month. Plaintiff disputed the premium increases. Plaintiff alleges that Defendant failed to comply with part (d) of the CBA prescription drug plan, which provided that beginning in 1998 "the employees will be responsible for all costs exceeding the CAP." Plaintiff's complaint stated, "The Company has failed to calculate the CAP in accordance with the CBA...." (J.A. at 10.) Defendant apparently failed to demonstrate to Plaintiff that the 1999 increase of premiums to $24.50 per month and the 2001 increase, to $50.98, were due to an increase in drug costs. As the district court stated, "The Union requested proof that the Cap had been exceeded and wanted to see the Company's calculations that had

---

1. The singular term, "Defendant," is used, because Fresh Mark controls its affiliated benefits-providers completely.

helped it determine the premium amount. The Company apparently did not have the supporting documentation." (J.A. at 31.)

Plaintiff did not utilize the arbitration grievance procedures that Defendant argues were required by the CBA. Both the 1994 and 1998 CBA's contain, in Paragraph 59, a grievance and arbitration procedure. (J.A. at 71–73; 77–79.) Paragraph 59 provides:

> Should any matter of difference or grievance arise with respect to the meaning or application of any provision of this Agreement, except as covered by Par. 57, an earnest effort shall be made to adjust and settle the same as promptly as possible in accordance with the following procedure....

(J.A. at 71, 77.) Paragraph 57 states:

> Questions regarding the interpretation or application of the right to insurance benefits under any policy certificate, other evidence of insurance or trust or benefit plan issued to any employee or employees under this agreement shall not be subject to arbitration. All such questions shall be resolved privately between the employee or employees involved and the insurance carrier or plan administrator.

(J.A. at 70, 75–76.)

Plaintiff argues that Paragraph 57 governed the dispute over drug premiums and that customary practice had always been to settle disputes in this area without resorting to arbitration procedures. An affidavit by Plaintiff's President stated,

> During the terms of the current as well as prior CBAs, Paragraph 57 has specifically stated that questions regarding the interpretation or application of the right to insurance benefits shall not be subject to grievance or arbitration.... [T]he Company and Union have always treated insurance matters including drug prescription benefits as not subject to grievance and arbitration.... The Union here followed the procedures practiced by the parties in attempting to resolve insurance issues through discussion. It was only after discussion was futile that the Union filed this lawsuit.

(J.A. at 170–71.)

## DISCUSSION

The sole question presented by this case is whether Plaintiff's failure to exhaust arbitration and grievance procedures to dispute Defendant's increases in drug premium defeats its claim.[2]

We review *de novo* a district court's dismissal of a claim pursuant to Fed. R.Civ.P. 12(b)(6). *Pfennig v. Household Credit Services, Inc.*, 295 F.3d 522, 525 (6th Cir.2002). In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the complaint is taken in the light most favorable to Plaintiff, and all factual allegations are accepted as true. *Dugan v. Brooks*, 818

---

**2.** On appeal, Plaintiff does not challenge the dismissal of the claim for unjust enrichment, under state law, or the dismissal of the claim for violation of ERISA. Plaintiff did not file a notice of appeal regarding the February 11, 2002 order denying Plaintiff's motion to vacate, thereby depriving us of jurisdiction over the district court's decision to deny Plaintiff's motion to vacate. Fed. R.App. P. 4(a)(4)(B)(ii) ("A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment altered or amended upon such a motion, must file a notice of appeal, or an amended notice of appeal-in compliance with Rule 3(c)-within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion."). (The motion to vacate falls under Fed. R.App. P. 4(a)(4)(A)(iv).) *See generally Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988); *United States v. Robinson*, 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960).

F.3d 513, 516 (6th Cir.1987). Dismissal is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims that would entitle him or her to relief. *Pfennig,* 295 F.3d at 525–26 (citing *Bibbo v. Dean Witter Reynolds, Inc.,* 151 F.3d 559, 561 (6th Cir.1998)).

Section 301 of the LMRA grants district courts jurisdiction over a suit alleging violation of a CBA:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

However, in cases under § 301 of the LRMA, a strong presumption of arbitrability has been applied to disputes in which a CBA has an arbitration clause. As we stated in *United Steelworkers of America v. Mead Corp., Fine Paper Div.,* 21 F.3d 128, 131 (6th Cir.1994),

where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *See AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 648–51, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986) (quoting *Warrior & Gulf Navigation,* 363 U.S. at 582–83, 80 S.Ct. at 1353). Moreover, in cases involving broad arbitration clauses the Court has found the presumption of arbitrability "particular-

ly applicable," and only an express provision excluding a particular grievance from arbitration or "the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Id.* 475 U.S. at 650, 106 S.Ct. at 1419 (quoting *Warrior & Gulf Navigation,* 363 U.S. at 584–85, 80 S.Ct. at 1353–54); *see also International Union, UAW v. United Screw & Bolt Corp.,* 941 F.2d 466, 472–73 (6th Cir.1991) (finding that the employer had "not satisfied the requirement for forceful evidence to overcome the presumption that the grievances should be arbitrated").

The standard that we quoted in *Mead Corp., Fine Paper Div.*-i.e., that where the agreement has an arbitration clause, the court ought not deny an order to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"-was set forth in *United Steelworkers of America v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), in an effort to follow Congressional intent. In that case, the Supreme Court stated,

The Congress ... has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the

particular grievance should not be denied *unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.* Doubts should be resolved in favor of coverage. *Id.* at 582–83 (emphasis added).

The arbitration clause in the present case, contained in Paragraph 59 of the CBA, is broad, pertaining to "any matter of difference or grievance aris[ing] with respect to the meaning or application of any provision of this Agreement." As such, the strength of the presumption of arbitrability increases. As stated in *Mead Corp., Fine Paper Div.,* "in cases involving broad arbitration clauses the Court has found the presumption of arbitrability 'particularly applicable,' and only an express provision excluding a particular grievance from arbitration or 'the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" 21 F.3d at 131.

In the present case, Plaintiff does not argue that the broad arbitration clause in Paragraph 59 would not cover the dispute, in the absence of Paragraph 57. Rather, Plaintiff argues that Paragraph 59–by specifically exempting from its reach those matters covered by Paragraph 57–contains an express provision that excludes from arbitration the grievance regarding drug premiums. Paragraph 57 of the CBA states,

> Questions regarding the interpretation or application of the right to insurance benefits under any policy certificate, other evidence of insurance or trust or benefit plan issued to any employee or employees under this agreement shall not be subject to arbitration. All such questions shall be resolved privately between the employee or employees involved and the insurance carrier or plan administrator.

Contrary to Plaintiff's argument, the dispute over prescription drug premiums does not fall under Paragraph 57's purview. Paragraph 57 is applicable where an individual insured employee, or a group of such employees, claims coverage for a particular medical procedure, and the plan administrator or insurance carrier denies his claim.[3] But the present dispute is not of that nature. An alleged violation of the CBA gives rise to the dispute in the present case. Yet Paragraph 57 describes a dispute "under any policy certificate," referring to the individual employee's insurance contract, not to the CBA itself. Paragraph 57 states that exempted issues "shall be resolved privately between the *employee or employees involved* and the insurance carrier or plan administrator." (J.A. at 70, 75–76) (emphasis added). But no employees are parties to the present case, which involves a dispute between the union and the company. Paragraph 57 covers disputes about "the right to insurance benefits," not disputes over the pricing of benefits where it is uncontested that employees have the right to the benefits.

Even if, as the affidavit of Plaintiff's President alleges, Defendant in its discretion had previously chosen to resolve disputes with the union through discussion, without resort to the arbitration procedures, Defendant still was not thereby bound to forever forego the arbitration procedures that were plainly a part of the CBA.

---

3. Parties routinely exclude individual claims for benefits from general CBA arbitration and grievance procedures. *See, e.g., Int'l Ass'n of Machinists, Dist. No. 10 v. Waukesha Engine Div.,* 17 F.3d 196, 198–99 (7th Cir.1994); *Oil Chem. & Atomic Workers Uion v. Amoco Chem. Corp.,* 589 F.2d 162, 163 (5th Cir.1979) (per curiam).

Because Paragraph 57 is not applicable to the present dispute, the dispute is governed by Paragraph 59. The broad arbitration clause in Paragraph 59 covers the dispute at issue; nor are there any facts that Plaintiff could prove that would alter this result. Accordingly, Plaintiff may not bring suit pursuant to § 301 of the LMRA. Plaintiff has failed to state a claim upon which relief can be granted.

### CONCLUSION

The presumption of arbitrability governs the present dispute. Plaintiff's claim must be dismissed for failure to exhaust the arbitration and grievance procedure. For the foregoing reasons, we **AFFIRM** the judgment of the district court.