## MARKOFF *v.* TOURNIER.

1. MORTGAGES — FORECLOSURE—MORTGAGOR FRAUDULENTLY INDUCED BY MORTGAGEE TO ALLOW EQUITY OF REDEMPTION TO EXPIRE ENTITLED TO EQUITABLE RELIEF.

    If a mortgagor, after the mortgage had been foreclosed, made an agreement with the mortgagees for the execution of a new mortgage on the premises after the period of redemption had expired, and he was led thereby to permit

The question as to whether future promise constitutes fraud is discussed in notes in 10 L. R. A. (N. S.) 640; 24 L. R. A. (N. S.) 735.

the redemption period to expire without redeeming, and thereafter the mortgagees refused to carry out said agreement, the mortgagor would be entitled to equitable relief on the ground of fraud.[1]

2. SAME—STATUTORY FORECLOSURES SHOULD NOT BE LIGHTLY SET ASIDE.

Statutory foreclosures should not be set aside without some very good reasons therefor.[2]

3. SAME—ONE CHARGING FRAUD HAS BURDEN OF PROOF.

In a suit to set aside a statutory foreclosure of a mortgage, plaintiff, who charges that he was induced by fraud to permit an equity of redemption to expire without redeeming, has the burden to establish his charge.[3]

4. SAME—EVIDENCE—SUFFICIENCY.

Evidence *held*, insufficient to establish plaintiff's charge that he was induced by fraud to permit an equity of redemption to expire without redeeming.[4]

5. SAME—MORTGAGORS FRAUDULENTLY INDUCED BY MORTGAGEES TO ALLOW EQUITY OF REDEMPTION TO EXPIRE ENTITLED TO EQUITABLE RELIEF.

Where plaintiffs' lots were included in a mortgage given by their vendor to defendants, which was foreclosed, and defendants assured plaintiffs that they could go on making their payments after the redemption period had expired the same as before, and in reliance thereon they made no effort to redeem, but defendants refused to carry out said agreement, *held*, that plaintiffs are entitled to equitable relief.[5]

Cross-appeals from Wayne; Collins (Joseph H.), J., presiding. Submitted December 3, 1924. (Docket Nos. 12, 13.) Decided January 28, 1925.

Separate bills by Charles Markoff and another and John P. Hehl and another against Joseph Tournier and another to redeem from a mortgage foreclosure and for the specific performance of a land contract. S. Edward Bolster and another intervened claiming rights

---

[1]Mortgages, 27 Cyc. p. 1817; [2]Id., 27 Cyc. p. 1665; [3]Id., 27 Cyc. p. 1669; [4]Id., 27 Cyc. p. 1669; [5]Id., 27 Cyc. p. 1817.

under contract with defendants. The cases were consolidated and heard as one. From a decree for plaintiffs Markoff, and dismissing the bill of plaintiffs Hehl and the petition of the interveners, plaintiffs Hehl, defendants and interveners, appeal. Affirmed.

*Charles E. George* and *Edmund E. Shepherd,* for plaintiffs Markoff and Hehl.

*Campbell, Bulkley & Ledyard (Selden S. Dickinson,* of counsel), for defendants and interveners.

BIRD, J. These cases were heard together. They involve the same lands and the same legal propositions. Both cases were filed for permission to redeem from a mortgage sale, and also for specific enforcement of a contract. The trial court granted Charles and Daisy Markoff relief, but denied relief to John P. and Susie G. Hehl. The interveners claim they made a contract for the lands after the equity of redemption had expired. Their petition was dismissed. All of the parties, except the Markoffs, appeal.

The record shows that plaintiff Hehl in 1916 purchased from defendants a tract of land in Redford township, Wayne county, containing about 19 acres, for the sum of $23,500. A small portion of the consideration was paid in cash, a portion in land contracts, and the balance was secured by a five-year mortgage on the premises, bearing interest at the rate of six per cent. Hehl sub-divided the tract into 108 lots, and recorded the plat as the "Crown Point Subdivision." Among other persons to whom he sold lots were the plaintiffs Markoff. They purchased on contract lots 11 and 12 on the subdivision, and erected thereon a store, with a flat in the second story. As the years passed the sale of lots progressed, but Hehl appeared to have difficulty in making his payments and paying interest on the mortgage. Finally de-

fendant Tournier commenced foreclosure proceedings, but before the day of sale Hehl made a payment of $7,000, and the foreclosure proceedings were discontinued. It was not long before Hehl was in default again. He failed to pay interest and taxes, and after a time foreclosure proceedings were again started and carried to a sale. Defendants Tournier bid in the property for the amount due on the mortgage.

Hehl Case. The date on which the equity of redemption expired was March 15, 1923. A few weeks before that date Hehl made several attempts to effect some arrangement with the Tourniers whereby they would accept a new mortgage, and he claims that he did finally conclude an arrangement whereby they were to accept the amount due on the mortgage, plus the delinquent taxes, and $3,000 as a bonus; that the Tourniers were to accept a new mortgage for $20,000, payable in two years, with interest at seven per cent., and if the total of these sums exceeded $20,000 the excess was to be paid in cash. It is claimed that this arrangement was made and was to be executed immediately after the equity of redemption had expired. That relying on this arrangement he permitted the equity to expire without redemption only to have the Tourniers refuse to carry it out afterwards. If we were convinced that this arrangement was made in good faith by Hehl and relied upon by him, and he would not have permitted the equity of redemption to expire except for such agreement, it would undoubtedly be a case for equitable relief. Such conduct on the part of the Tourniers would have amounted to a fraud upon Hehl. 12 R. C. L. p. 261; *Laing* v. *McKee*, 13 Mich. 124 (87 Am. Dec. 738); *Kefuss* v. *Whitley*, 220 Mich. 83. The difficulty of applying that principle to this case is that we are not persuaded that the Tourniers made such an arrangement with him. There is no question but that Hehl

made several visits to the Tournier home and made several offers, and made the offer which he now insists was agreed to. The Tourniers deny that any such arrangement was made, and Hehl's own account of the talk he had with Mrs. Tournier at Mr. Powell's law office on the day he claims the deal was to be closed, is not convincing that any previous arrangement had been concluded between them. Aside from these considerations the surrounding circumstances are not favorable to Hehl's contention. The manner in which Hehl dealt with the Tourniers for a period of upwards of five years in regard to this property is not commendable. He was constantly in arrears and in default, and his promises were many and too easily broken to inspire great confidence in his word. If Hehl could not pay a 15,000-dollar mortgage, how he hoped to be able to convince the Tourniers that he could pay a 20,000-dollar mortgage is not clear to us. He undertakes to make some showing that he could have raised the money elsewhere. If he could have raised the money the day after the equity expired, no reason is suggested why he could not have raised it the day before it expired, and saved the bonus of $3,000. Statutory foreclosures should not be set aside without some very good reasons therefor. The burden of proof was on Mr. Hehl to establish his version of the affair. He has failed in this respect, and consequently no relief can be granted to him.

Markoffs' Case. It is conceded by the Markoffs that they understood the Tourniers' mortgage covered their two lots, and that the same had been foreclosed. It appears that they lived next door to the Tourniers and knew them very well; that a short time before the equity of redemption expired they went over to the Tournier home and had a talk with them concerning the matter, and they were assured by the Tourniers that they need not worry over the matter; that the

lots were bid in for $1,610, the balance due thereon, and they would be permitted to go on paying on their contract, the same after the equity of redemption expired as before. That relying on these assurances they permitted the equity of redemption to expire without payment. After the equity expired the Tourniers demanded as a condition of conveyance $6,500. It appears that the Markoffs were people of limited means, and were not well versed in either business or legal matters. They had improved one of their lots, and it was difficult for them to pay the amount for which the property was bid in before the equity expired. The Tourniers were near neighbors and friendly, and well understood their financial condition. It was a very reasonable and equitable thing to offer to allow them to continue their payments after as well as before the equity expired. In doing this, they would lose nothing. It is quite probable that had the Markoffs been apprised of the real attitude of the Tourniers they could, and would, have secured financial help elsewhere, as the purchase price of the lots had been reduced to $1,610. Unless they had relied upon the assurances given them by the Tourniers it seems improbable that they would have sat by and permitted the equity to expire without making some effort to secure the money elsewhere. If the Markoffs relied upon these assurances, and would not have permitted the equity of redemption to expire but for such assurances, it amounted to such a fraud on them as will entitle them to relief. (See cases cited in *Hehl Case.*) We are impressed upon the whole testimony that assurances of this character were made to the Markoffs, and that they relied upon them. Just why the Tourniers afterward altered their minds with reference to it does not appear, and perhaps is not important. We are content with the decree made by the trial court in relation to these lots, and it will

be affirmed as to the Markoffs, with costs of both courts to them.

The decree in Hehl v. Tournier will be affirmed, with costs to defendants Tournier.

The decree dismissing the petition of interveners will be affirmed, without costs.

McDONALD, C. J., and CLARK, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.