UNITED STATES of America, Plaintiff,

v.

Kenneth J. GARNO and Beverly
E. Garno, Defendants.

No. 96–CV–60260–AA.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 13, 1997.

Francis Zebot, Asst. U.S. Atty., Detroit, MI, for Plaintiff.

Gregory G. Justis, Petoskey, MI, for Defendants.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

HACKETT, District Judge.

This is an eviction action in which the federal government claims that it is entitled to title and possession of the land upon which defendants live. On the other hand, defendants challenge the validity of the foreclosure proceedings under which the government claims entitlement to the land and seek judicial review of a prior adverse administrative decision. Now before the court is the government's motion for summary judgment. For the following reasons, the government's motion shall be granted.

### I. FACTS

For over 28 years, defendants Kenneth Garno and Beverly Garno have resided in Palmyra Township, Lenawee County, Michi-

**630**

gan, on an eight acre farm [1] conducting seed corn farming operations and other agricultural activities. To finance their farming operations, defendants borrowed substantial sums from Trustcorp Bank, Lenawee (Trustcorp) through a loan program backed by the United States government, acting through the Farms Home Administration (FmHA). Eventually, defendants defaulted on their loan.

As a result, on August 17, 1988, Trustcorp foreclosed upon defendants' property by advertisement. The federal government bid at the sheriff's sale and purchased the property to protect its mortgage interest.

On August 17, 1989, defendants' redemption period expired without defendants having exercised their redemption rights. Defendants, however, claim that they were never advised of their redemption rights, and that when they spoke with the local FmHA supervisor after the sale, they were told to "just wait, because new guidelines were being worked out in Washington" to help people in their situation.

Shortly after the redemption period expired, on September 15, 1989, the government, in accordance with its servicing regulations governing inventory farm property, 7 C.F.R. §§ 1951–S, 1955–D, entered into a lease of the property with defendants. The lease term ran from October 1, 1989, to September 30, 1994, and called for monthly rent of $1,500.

In September of 1992, defendants fell behind on their rent payments, although they had managed to pay about $40,000 before defaulting on the lease. Defendants are currently $12,100 delinquent and have not made any payments since September 22, 1992, the date FmHA sent defendants a notice advising that their lease was being terminated and ordering them to vacate the property. At that point, defendants obtained legal counsel and requested an appeal of the FmHA's adverse action.

On July 19, 1993, a final administrative decision was issued by the FmHA National Appeals Division (NAD) which upheld the FmHA's action. Thereafter, defendants filed a complaint for judicial review by this court. See Garno v. United States, 93–CV–74465–DT. However, several months after filing suit, the parties stipulated to dismiss the complaint without prejudice and remand the matter to the FmHA for further administrative proceedings.

Next, on April 1, 1994, a FmHA supervisor sent defendants a letter offering them two leases on the farm property for a total payment of $1,709 per month based on the same appraisals used to determine rental rates in the previous lease. Defendants appealed the determination of lease amounts, arguing that the appraisal value was too high.

On June 15, 1994, a hearing officer of the NAD reversed the FmHA's adverse action because (1) the FmHA failed to offer defendants a "buyback option" in addition to a lease, as required by FmHA Instruction 1951–S, § 1951.911(a)(5); and, (2) the FmHA based its determination of lease amounts entirely on a prior real estate appraisal, failing to obtain from the County Supervisor a survey of lease amounts of farms in the immediate area with similar soils, capabilities and income, as required by FmHA Instruction 1951–S, § 1951.911(a)(6)(iii). Thus, the FmHA was directed to offer defendants a specific buyback amount and terms and also to offer a lease based on a local survey of comparable leases.

On July 27, 1994, the FmHA provided defendants with another offer which proposed to divide the farm property into two parcels of land and charge rent as follows: the monthly rental amount for the house and three acres under Homestead Protection would be $552, and the monthly rental for the remaining five acres and buildings could be leased under the leaseback/buyback provisions for a monthly rental of $966, for a total monthly rental of $1,518. Once again, defendants appeal this "adverse" offer.

And once again, on October 26, 1994, the FmHA action was reversed because: (1) the FmHA's decision to divide the property into

---

**1.** The subject property consists of approximately eight acres of land, including a 4,800 plus square foot dwelling, a 680 square foot out-building, a 30,960 square foot warehouse building, grain bins providing 125,000 bushels of storage, and a 1,000 square foot pole barn.

two parcels of three and five acres was not consistent with FmHA Instruction 1951–S, § 1951.911(b)(1), which provides that homestead property can include up to ten acres; and, (2) FmHA Instruction 1951–S, § 1951.911(b)(8)(i)(A) requires that the amount of rent charged for the lease must be based on equivalent rents charged for similar properties in the area, and the County Supervisor is responsible for documenting a sufficient number of equivalent rents to support the lease amounts. Although a FmHA contract appraiser prepared a rental survey to determine the rental amount for the lease, adjustments and changes to the initial survey prepared by the appraiser were either not explained or did not have supporting documentation to support the changes and, thus, failed to comply with § 1900.53(a)(1), which requires that all documentation and calculations necessary to FmHA decision-makers be accurate, complete, and included in the administrative file.

Accordingly, on November 25, 1994, the FmHA offered to lease the farm to defendants for $2,010, based on a rental survey dated July 12, 1994, and prepared by a certified appraiser. Defendants appealed again, arguing that the appraisal was improper because the property was separated into components with rental values attached to each, rather than the entire unit being considered as a homestead residence with one value. Defendants believed the proposed rent was excessively high and that the appraiser had not surveyed similar properties in the same area to determine an appropriate lease amount.

However, on March 29, 1995, a NAD hearing officer issued a decision upholding the FmHA's lease offer. The hearing officer held that the rental survey relied upon by the FmHA to determine the rent amount "compiled market rents for the different component parts of the Homestead Protection Property. The best available comparable market rents were considered in the determination. The certified appraiser noted the current use of the facilities included a seed corn operation which increased the difficulty in finding similar properties." The hearing officer then concluded that the offer

to lease the property to defendants for $2,010 a month was supported by the facts and the law because:

> The evidence shows the County Supervisor sought the advise [sic] of a certified real estate appraiser to advise what equivalent rents for similar properties are in the area. The County Supervisor exceeded what a reasonable person would conclude by requesting the advise [sic] of a certified real estate appraiser to establish market rents. The County Supervisor made a reasonable attempt to arrive at the market rent for the subject property.

Defendants appealed the unfavorable decision, but the Acting Director of Appeals upheld it on July 5, 1995, finding that: (1) defendants did not provide any new factual evidence that the rental rate determined was not representative of actual market conditions of similar properties; and, (2) the hearing officer's decision upholding the FmHA's determination of rental rate was supported by substantial evidence.

Consequently, on July 12, 1995, the local office of the Rural Economics and Community Development (RECD), formerly FmHA, sent defendants a letter requesting that they sign the lease and further advising that a security deposit would be required. However, because requiring a security deposit is contrary to RECD regulations, defendants appealed. Although an appeal hearing was scheduled on September 12, 1995, the local office of the RECD advised defendants that no deposit would be required. Thus, on August 31, 1995, the NAD sent defendants a letter advising that their appeal was withdrawn because the security deposit issue was moot.

By letter dated September 8, 1995, the government ordered defendants to vacate the property based on their occupancy without a lease. On September 12, 1995, defendants filed an appeal of the demand to vacate. On December 15, 1995, the NAD upheld the demand to vacate and that decision was later upheld twice on review on February 27, 1996, and May 17, 1996.

Finally, on May 29, 1996, the government filed this eviction action pursuant to 28 U.S.C. § 1345. In response, defendants

challenge the validity of the foreclosure proceedings under which the government claims title and possession to the property and request judicial review of the May 17, 1996, administrative decision. Defendants seek: (1) an order declaring Trustcorp's foreclosure sale to be invalid for violations of the Michigan nonjudicial foreclosure statute, M.C.L §§ 600.3232 and 600.3224; (2) a de novo trial reviewing the May 17, 1996, administrative decision; (3) an order determining that the May 17, 1996, decision is contrary to the law and the facts, constitutes an abuse of discretion, and is not supported by substantial evidence of the whole record; (4) an order prohibiting the government from proceeding further with the eviction, or in the alternative, for a remand to the agency for redetermination of defendants' eligibility for the relief they requested; and, (5) costs and attorney fees. On the other hand, the government argues that it is entitled to summary judgment as a matter of law. The court now turns to the government's motion for summary judgment.

## II. *STANDARD OF REVIEW*

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See F.D.I.C. v. Alexander*, 78 F.3d 1103, 1106 (6th Cir.1996). The standard for determining whether summary judgment is appropriate is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Winningham v. North Am. Resources Corp.*, 42 F.3d 981, 984 (6th Cir.1994) (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir.1989)).

The evidence and all inferences therefrom must be construed in the light most favorable

to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Enertech Electrical, Inc. v. Mahoning County Comm'rs*, 85 F.3d 257, 259 (6th Cir.1996); *Wilson v. Stroh Cos., Inc.*, 952 F.2d 942, 945 (6th Cir.1992). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Hartleip v. McNeilab, Inc.*, 83 F.3d 767, 774 (6th Cir.1996).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270, 88 S.Ct. 1575, 1583, 20 L.Ed.2d 569 (1968); *see also Adams v. Philip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir.1995). Mere allegations or denials in the non-movant's pleadings will not meet this burden. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Further, the non-moving party cannot rest on its pleadings to avoid summary judgment. It must support its claim with some probative evidence. *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir.), *cert. denied*, 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993).

## III. *DISCUSSION*

### A. *Government's Claim to Title and Possession is Valid*

Defendants seek in their answer and affirmative defenses to set aside the foreclosure sale of their property conducted by Trustcorp in August of 1987. Specifically, defendants claim that the sale should be declared invalid because the property was not sold in parcels under M.C.L. § 600.3224,[2] and be-

---

**2.** M.C.L. § 600.3224 provides:

> If the mortgaged premises consist of distinct farms, tracts, or lots not occupied as 1 parcel, they shall be sold separately, and no more

farms, tracts, or lots shall be sold than shall be necessary to satisfy the amount due on such mortgage at the date of the notice of sale, with interest and the cost and expenses allowed by

cause the sheriff's deed did not list the redemption period under M.C.L. § 600.3232.[3]

Michigan courts have long held that statutory foreclosures should not be set aside without very good reason and, thus, have placed the burden of proof upon the party who attempts to impeach them. *Markoff v. Tournier*, 229 Mich. 571, 575, 201 N.W. 888, 889 (1925). The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside. *Detroit Trust Co. v. Agozzinio*, 280 Mich. 402, 405–06, 273 N.W. 747, 748 (1937); *Calaveras Timber Co. v. Michigan Trust Co.*, 278 Mich. 445, 450, 270 N.W. 743, 745 (1936). Here, the issues raised by defendants with regard to Trustcorp's foreclosure sale do not rise to the level of fraud, irregularity, or exigency to warrant setting aside the sale.

As to defendants' claim that their property was not sold in parcels, Michigan courts have historically looked at the intended use of property in deciding the manner in which it is to be sold at a foreclosure sale. Specifically, courts must conclude that the borrower occupied or mortgaged the property as more than one parcel before ordering a sale of it in distinct and separate parcels. *Larzelere v. Starkweather*, 38 Mich. 96, 194 (1878). In this case, defendants did neither. They occupied their entire eight acre farm as one parcel and mortgaged it as one parcel not only to plaintiff, but to Trustcorp as well.

Defendants' claim that the sheriff's deed did not list the redemption period also fails to warrant setting aside the foreclosure sale. The fact that a sheriff's deed does not list a redemption period is not crucial to the validity of a foreclosure sale, as the foreclosure statutes are not to be construed as specifically prescribing the form of the sheriff's deed. *Reading v. Waterman*, 46 Mich. 107, 111–12, 8 N.W. 691, 692–93 (1881). Furthermore, the provision in M.C.L.

§ 600.3232, which requires the officer conducting the sale to endorse upon the deed when it will become operative, has been held to be merely directory in nature, not altering the legal period of redemption and not voiding the foreclosure. *Johnstone v. Scott*, 11 Mich. 232, 244 (1863); *see also Doyle v. Howard*, 16 Mich. 261, 267 (1867).

In this case, although the redemption period was not listed on the sheriff's deed it was listed on the "Affidavit of sale by Sheriff" which was attached to and recorded with the sheriff's deed after the sale. This constituted substantial compliance with the statute and amply provided defendants with notice of their redemption rights.

Moreover, Trustcorp, not the government, took adverse action against defendants by foreclosing on their property. The government purchased the property at the foreclosure sale to protect its mortgage interest. As the successful purchaser at a nonjudicial foreclosure sale, the government was not required under Michigan law to notify defendants of their redemption rights. Similarly, the government was under no duty to notify defendants of any loan servicing option, including moratorium relief under 7 U.S.C. § 1981(a), because it did not take adverse action against defendants nor foreclose upon its mortgage.

Finally, defendants are estopped by laches and barred by the statute of limitations from attacking the validity of Trustcorp's foreclosure sale at this time. Defendants now raise the present issues for the first time more than eight years after the sale. Michigan courts agree that disgruntled mortgagors must act promptly and without delay, having estopped attacks on foreclosure sales due to irregularities in the sale which were brought only two years or even less after a sale. *White v. Burkhardt*, 338 Mich. 235, 239, 60 N.W.2d 925, 927 (1953), (26 months); *Fox v. Jacobs*, 289 Mich. 619, 625–

---

law but if distinct lots be occupied as 1 parcel, they may in such case be sold together.

**3.** M.C.L. § 600.3232 provides in relevant part:
The officer or person making the sale shall forthwith execute, acknowledge, and deliver, to each purchaser a deed of the premises bid off by him.... And he shall endorse upon each deed the time when the same will become operative in case the premises are not redeemed according to law.

26, 286 N.W. 854, 857 (1939), (19 months). Moreover, a five-year statute of limitations bars not only the bringing of actions challenging a sheriff's mortgage foreclosure sale, but also the asserting of irregularities in such sale by way of defense. M.C.L. § 600.5801; *Olmstead v. Johnson,* 313 Mich. 57, 63–64, 20 N.W.2d 809, 812 (1945). Thus, defendants here are barred, more than five years having passed between the foreclosure sale on August 17, 1988, and their assertion of defenses raising irregularities in the sale in their answer filed on September 17, 1996.

B. *NAD's Decision Upholding Government's Demand to Vacate is Proper*

■ Defendants also seek in their answer and affirmative defenses, pursuant to the Administrative Procedures Act (APA), 5 U.S.C. §§ 701–706, judicial review of the NAD's May 17, 1996, decision upholding the government's demand for defendants to vacate the property. The APA prescribes the procedures, scope, and standards of judicial review of final agency determinations. The most generally applicable standard of review is found at 5 U.S.C. § 706(2)(A), which states that the reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." In applying that standard, the reviewing court must determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment," as well as whether the agency followed the necessary procedural requirements in reaching its decision. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416–17, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971).

■ The reviewing court is prohibited from substituting its own judgment for that of the agency, and the agency's decisions are "entitled to a presumption of regularity." *Id.* at 415, 91 S.Ct. at 823. Furthermore, the agency's action may not be "attacked or supported in court by new evidence." *Tagg Bros. & Moorhead v. United States,* 280 U.S. 420, 444, 50 S.Ct. 220, 226, 74 L.Ed. 524 (1930). "The grounds upon which an administrative order must be judged are those upon which the record discloses that [the] action was based." *Securities and Exch. Comm'n v. Chenery Corp.,* 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). Although an exception to the rule limiting review to the administrative record exists, 5 U.S.C. § 706(2)(F), it involves the rare and unusual situation where "agency factfinding procedures are inadequate." *Volpe,* 401 U.S. at 415, 91 S.Ct. at 823; *see also Camp v. Pitts,* 411 U.S. 138, 141–42, 93 S.Ct. 1241, 1243–44, 36 L.Ed.2d 106 (1973). Defendants have made no showing of coming within the exception and thus are not entitled to a trial de novo.

■ On September 11, 1995, the government served upon defendants a demand to vacate the property it had purchased at the foreclosure sale on August 18, 1987, because defendants had been in possession of, and living rent free on, its property without a lease since September 22, 1992, and were $12,100 delinquent on their prior lease. Defendants responded to the government's demand by filing a request for appeal of adverse action, citing an "improper appraisal" as the basis for their refusal to enter into a new lease.

An appeal hearing was held before an NAD hearing officer on October 25, 1996. At the hearing, defendants argued that the existence of a current, independent appraisal was a prerequisite to their entering into a lease. However, the hearing officer determined that no such requirement exists and consequently issued a decision upholding the government's notice to vacate on December 15, 1995. That decision was later upheld twice on review by the National Appeals Director on February 27, 1996, and May 17, 1996.

To date, defendants have failed to produce any evidence of impropriety regarding the appraisal. Therefore, the court finds that the government acted within its statutory and regulatory authority when it sent to defendants a demand to vacate, and that the subsequent administrative review of the government's action revealed it to have a rational basis supported by the relevant facts and applicable law.

Since September 22, 1992, defendants have prosecuted six administrative appeals of their

lease with the government while living rent free on the government's property. This circumstance belies defendants' argument that they were not adequately notified of their rights and that they have been ill-served by the appeal process. Rather, defendants' use of the appeal process has afforded them benefits far beyond that which would have been provided had they signed a new lease. Not only have defendants been able to retain possession of the government's property after the bank's foreclosure thereon (a goal of the leaseback/buyback program), but they have also managed to do so without paying rent for four and a half years.

## IV. CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment hereby is GRANTED.

SO ORDERED.

## JUDGMENT

The above-captioned matter has come before the court on plaintiff's motion for summary judgment, and in accordance with the court's order granting plaintiff's motion for summary judgment entered on August 13, 1997,

IT IS ORDERED AND ADJUDGED that judgment hereby is GRANTED in favor of plaintiff.