Anthonia **WORTHY**, Plaintiff,

v.

**WORLD WIDE FINANCIAL SERVICES, INC., Real Financial, L.L.C., Homecomings Financial Network, Inc., Select Portfolio Servicing, Inc. f/k/a Fairbanks Capital Corp., Mortgage Electronic Registration Services, Inc. Defendants.**

No. CIV. 04–72969.

United States District Court,

E.D. Michigan,
Southern Division.

Dec. 13, 2004.

504

Kevin W. Kevelighan, Kevelighan & Kevelighan, Bingham Farms, MI, for Plaintiff.

Monica L. Plaxton, Thomas G. Costello, Lipson, Neilson, Bloomfield Hills, MI, Robert M. Horwitz, Thomas M. Schehr, Dykema Gossett, Detroit, MI, for Defendants.

## OPINION AND ORDER

FEIKENS, District Judge.

This is a consumer lending case arising out of Plaintiff's mortgage with Defendants and Defendants' foreclosure on Plaintiff's home. Plaintiff alleges that Defendants violated the Truth in Lending Act, 15 U.S.C. § 1601 et. seq. ("TILA") by failing to provide Plaintiff with the requisite number of Notices of Right to Cancel and the material disclosures. Further, Plaintiff alleges that by violating TILA, Defendants also violated Michigan's Secondary Mortgage Loan Act ("SMLA"), M.C.L.A. § 493.51. Finally, Plaintiff claims that the foreclosure sale should be voided because (1) the adjournment of the foreclosure proceeding violated the automatic stay under the bankruptcy code; and (2)

the notice of foreclosure incorrectly stated he was a woman.

Defendants Homecomings Financial Network, Inc. ("Homecomings") and Mortgage Electronic Registration Services, Inc. ("MERS") move for this Court to dismiss Plaintiff's First Amended Complaint in its entirety. The remaining Defendants Real Financial L.L.C. ("Real"), World Wide Financial Services, Inc. ("World Wide") and Select Portfolio Servicing, Inc. ("Select") concur with this Motion to Dismiss Plaintiff's complaint. For the reasons below, I GRANT Defendants' Motion to Dismiss, pursuant to Fed.R.Civ.P. 12(b)(6).

## I. FACTUAL BACKGROUND

On April 4, 2002, Worthy refinanced his home mortgage loan with World Wide. (Pl.'s Am. Compl. ¶ 10.) Real was the broker that originated the loan, and World Wide funded the loan. *Id.* at ¶ 12–13. The mortgage secured a property located in Sumpter Township, in Wayne County. (Br. in Supp. of Mot. to Dismiss at 2; citing Pl.'s Am. Compl. Ex. E.) World Wide subsequently assigned its rights in the mortgage to Homecomings. (Pl.'s Am. Compl. ¶ 14.) Homecomings subsequently assigned its rights in the mortgage to Select. *Id.* at ¶ 15. MERS purchased the property at the foreclosure sale. (Br. in Supp. of Mot. to Dismiss Ex. B.)

MERS commenced a foreclosure proceeding and published a notice of foreclosure by advertisement in the Detroit Legal News on September 23, 2003. (Br. in Supp. of Mot. to Dismiss at 2.) This notice listed the names of the mortgagor and mortgagee, the date of the mortgage and its recording, the amount due ($280,944.90 plus interest), described the property, and stated the six-month redemption period. (Pl.'s Am. Compl. Ex. E.) Additionally, this notice referred to Worthy as "a single woman" although Plaintiff is a single man. *Id.* at 1.

A foreclosure sale was scheduled for October 22, 2003. *Id.* at ¶ 20. On October 21, 2003, Plaintiff filed his third bankruptcy petition in less than a year under Chapter 13 of the Bankruptcy Code. (Br. in Supp. of Mot. to Dismiss at 2.) Therefore, the foreclosure auction was adjourned to February 4, 2004. (Pl.'s Response to Mot. to Dismiss at 2.) The bankruptcy court dismissed Plaintiff's bankruptcy case on January 23, 2004, and entered an order stating that Plaintiff "is barred from filing a case under any chapter for 180 days." (Br. in Supp. of Mot. to Dismiss Ex. E; citing *In re Anthonia Worthy*, No. 03–68948 (Bankr.E.D.Mich. Jan. 23, 2004) (Am. Order Dismissing Chapter 13 Bankruptcy with a 180–Day Bar to Refiling Bankruptcy).)

On February 4, 2004, a foreclosure sale was held. (Pl.'s Am. Compl. ¶ 17.) MERS purchased the property for $298,050.73, and obtained a sheriff's deed to the property. (Br. in Supp. of Mot. to Dismiss Ex. F.) Plaintiff's redemption date for the property was August 4, 2004. (Pl.'s Am. Compl. Ex. D.) On August 4, 2004, Worthy's attorney sent a letter to all the Defendants stating Plaintiff rescinded the loan transaction that Worthy entered into with World Wide. *Id.* at Ex. B. Worthy did not tender any money to redeem the property before the expiration of the redemption period. (Br. in Supp. of Mot. to Dismiss at 3.)

## II. ANALYSIS

### A. *Motion to Dismiss Standard*

A party is entitled to a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim on which relief can be granted. A motion to dismiss may be granted under Fed.R.Civ.P. 12(b)(6), "only if it is clear that no relief could be granted

under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). In reviewing the motion, courts must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Ziegler v. IBP Hog Mkt., Inc.,* 249 F.3d 509, 512 (6th Cir.2001).

**B. Truth in Lending Act (15 U.S.C. § 1601 et. seq.) & Michigan's Secondary Mortgage Loan Act (M.C.L. § 493.51)**

**1. Right to Rescind the Mortgage Transaction**

Plaintiff alleges that Defendants violated TILA because Defendants did not provide Plaintiff with two separate sets of notices of Plaintiff's right to rescind the mortgage transaction within three days of closing.[1] (Pl.'s Compl. ¶ 26.) Plaintiff claims that because Defendants did not provide him with two separate notices Plaintiff retained his "right to rescind the mortgage transaction until expiration of three years from the date of consummation of the transaction." *Id.* at ¶ 27. Defendants Homecomings and MERS contend that Plaintiff's right to rescind the mortgage transaction under TILA expired on February 4, 2004, the day of the foreclosure sale of the property. (Br. in Supp. of Mot. to Dismiss at 5.)

The TILA and its implementing Regulation Z require that a creditor deliver to an obligor two copies of a notice of the right to rescind a credit transaction prior to the consummation of a consumer credit sale. 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a)(1) and (b)(1). An obligor may rescind the credit transaction "until midnight of the third business day following consummation, delivery of the notice [ . . . ], or delivery of all material disclosures, whichever occurs last." 12 C.F.R. § 226.23(a)(3). Where the creditor does not deliver the required notice or material disclosures, "the right to rescind shall expire 3 years after consummation [of the transaction], upon transfer of all the consumer's interest in the property, [or] upon sale of the property, whichever occurs first." *Id.;* 15 U.S.C. § 1635(f).

Plaintiff claims that "completion of the foreclosure auction in the instant case" does not terminate Plaintiff's right to rescind the mortgage transaction because "the FED says all the consumer's interest must be transferred before the right to rescind is extinguished." *Id.* at 5. However this argument fails. "A sale or transfer of the property need not be voluntary to terminate the right to rescind. For example, a foreclosure sale would terminate an unexpired right to rescind." 12 C.F.R. § 226.23(a)(3) (Supp.I.1995).

Plaintiff attempts to escape the regulation by arguing that the Sixth Circuit has stated that courts should interpret TILA in the borrower's favor TILA provides rights to Plaintiff beyond the plain meaning of the statute. The cases cited, however, provide no support for the proposition that this regulation is invalid. *Weeden v. Auto Workers Credit Union,* 173 F.3d 857,

---

1. Plaintiff's counsel raised a nearly identical unsuccessful argument against Defendant World Wide in a similar case that was decided in 2003. *Helton v. World Wide Fin. Serv., Inc.,* No. 01–CV–74288 (E.D.Mich. March 31, 2003) (Unpublished) (Mem. Opinion and Order Granting Defendants' Motions for Summary Judgment) (the plaintiffs claimed that they should have been entitled to rescind their mortgages and retain all proceeds from their mortgages because as they allege, they each did not receive the requisite two copies of the "Notice of the Right to Cancel").

1999 WL 191430 (6th Cir.1999), *cert denied*, 528 U.S. 1076, 120 S.Ct. 790, 145 L.Ed.2d 667 (2000) (examining whether those plaintiffs properly rescinded their mortgage transaction, when the property at issue had not been sold or transferred); *Pfennig v. Household Credit Services, Inc.*, 295 F.3d 522 (6th Cir.2002) (reversed on different grounds)(discussing whether a fee imposed on the plaintiff's monthly statement should include the fee for exceeding her credit limit)[2]; *Inge v. Rock Fin. Corp.*, 281 F.3d 613 (6th Cir.2002)(analyzing whether the defendant violated the TILA by failing to disclose, as part of its finance charge, its fees for "document preparation" and "settlement or closing" prior to the settlement date). Therefore, this Court will not grant Plaintiff any rights beyond those explicitly stated in the statute. The language of the statute, read in a light most favorable to Plaintiff borrower, does not provide Plaintiff with a right to rescind the mortgage transaction after the foreclosure auction.

Plaintiff raises two more reasons why this Court should grant to Plaintiff a right of recision after the foreclosure auction. Plaintiff argues: (1) "TILA is a Federal Law impacting each separate state's particular foreclosure procedures;" and (2) "the foreclosure auction is one step in each foreclosure sale process—in some states the auction is the step which finally transfers all the consumer's interest, while in others it is not." (Pl.'s Response to Mot. to Dismiss at 5.) Plaintiff's arguments are unconvincing. Plaintiff's first point is a conclusory statement that appears to argue, yet again, that this Court disregard the statutory language and the interpretation of the statute by the implementing agency ("a foreclosure sale would terminate an unexpired right to rescind."). 12 C.F.R. § 226.23(a)(3) (Supp.L.1995). Plaintiff offers no support for the contention that this Court should read this sentence in a manner other than the way in which it Federal Reserve's staff wrote it.

■ Plaintiff's second argument is that this Court should substitute the phrase "foreclosure sale" with "transfer of all of the consumer's interest." (Pl.'s Response to Mot. to Dismiss at 5.) However, this Court must give the words their standard ordinary meaning because the Federal Reserve's interpretation of the statute is a permissible construction of the statute. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Therefore, Plaintiff had no right to rescind the refinancing mortgage transaction after the foreclosure auction. Thus, viewing the evidence in a light most favorable to Plain-

**2.** In asking this Court to interpret the Federal Reserve Board's Staff Interpretations differently than the manner in which they are written, Plaintiff ignores the holdings of both the Sixth Circuit Court of Appeals and the Supreme Court of the United States which are presented in the *Pfennig* opinion. The court in *Pfennig*, quoting the U.S. Supreme Court, stated that these Staff Interpretations should be given great deference:

'[. . .] Congress delegated to the FRB the authority to elaborate and expand the legal framework governing the commerce in credit.' The Supreme Court has recognized that TILA is a highly technical act and that deference should be given to the FRB's interpretation of the Act as long as such interpretations are not irrational. In explaining the deference that courts should afford to the FRB's interpretation of TILA, the Court stated: 'wholly apart from jurisprudential considerations or congressional intent, deference to the . . . [FRB] is compelled by necessity; a court that tires to chart a true course to the Act's purpose embarks upon a voyage without compass when it disregards the agency's views.' [. . .]

*Pfennig*, 295 F.3d at 526–7; citing *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555 at 567, 568, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980).

tiff, Plaintiff did not rescind the transaction when he sent a letter to the Defendants after the foreclosure auction.

### 2. Redemption of the Property

██ The State of Michigan permits a mortgagor to reacquire foreclosed property if the borrower pays to the purchaser the amount that was bid for the property plus interest within the statutory six month redemption period. M.C.L. § 600.3240(1), (2) and (8). A party has redeemed the property where "one having the right to redeem pays in proper time, to a proper person, the sum which was bid with interest from the time of the sale at the rate per cent. borne by the mortgage [. . . .]" *Heimerdinger v. Heimerdinger,* 299 Mich. 149, 155, 299 N.W. 844 (1941).

Plaintiff's redemption period expired on August 4, 2004. Plaintiff was aware that this was the date that his redemption period expired. (Pl.'s Compl. Ex. D.) Plaintiff did not pay the purchaser, MERS, any money before the expiration of the redemption date. (Br. in Supp. of Mot. to Dismiss at 6.) Instead Plaintiff sent letters to all the Defendants attempting to rescind the transaction. (Pl.'s Compl. Ex. E.) Therefore, Plaintiff did not comply with the statute's requirements to redeem the property. Thus, I GRANT Defendants' Motion to Dismiss Plaintiff's claim under TILA.

### 3. Michigan's Secondary Mortgage Loan Act (M.C.L. § 493.51)

Plaintiff alleges Defendants violated Michigan's Secondary Mortgage Loan Act ("SMLA"), M.C.L. § 493.51 by violating TILA. (Pl.'s Am. Compl. ¶ 32.) As stated above, Defendants did not violate TILA, so Plaintiff's claim under SMLA also fails. I

GRANT Defendants' Motion to Dismiss Plaintiff's claim under SMLA.

### C. Violation of the Bankruptcy Court's Automatic Stay of Proceedings

██ Plaintiff claims that Defendant MERS violated the automatic stay provisions of the bankruptcy code when MERS postponed the foreclosure sale until after the dismissal of Plaintiff's bankruptcy case. (Pl.'s Am. Compl. ¶ 22.) Plaintiff claims that "any adjournment of the foreclosure sale would be akin to actions taken in a Court of Law to continue the action in foreclosure; therefore, such action is a violation of the automatic stay." (Pl.'s Response to Mot. to Dismiss at 14.)

██ The Bankruptcy Code grants a debtor an automatic stay when the debtor files a petition "to give the debtor a breathing spell from his creditors, to stop all collection efforts, stop all harassment of a debtor seeking relief, and to maintain the status quo between the debtor and his creditors, thereby affording the parties and the court an opportunity to appropriately resolve competing economic interests in an orderly and effective way." *In re Fine,* 285 B.R. 700, 702 (Bankr.D.Minn. 2002), see also 11 U.S.C. § 362. Several courts have held that a postponement of a sheriff's sale in accordance with state law does not violate 11 U.S.C. § 362. *In re Fine,* 285 B.R. at 702.[3]

The Third Circuit Court of Appeals in *Taylor v. Slick* explained its reasoning for concluding that a postponement of a sheriff's sale does not violate 11 U.S.C. § 362:

> [T]he filing of a bankruptcy petition prohibits the beginning ("commencement") of a judicial proceeding and the carrying

**3.** In *In re Fine,* 285 B.R. at 702, the United States Bankruptcy Court for the District of Minnesota cited eight cases including cases from the Third and Ninth Circuit Court of Appeals to support this proposition.

forward ("continuation") of a proceeding that has already begun.

The "continuation" of a sheriff's sale on the other hand, connotes the postponement of a proceeding, and effectuates the purposes of § 362(a)(1) by preserving the status quo until the bankruptcy process is completed or until the creditor obtains relief from the automatic stay.

178 F.3d 698, 702 (3rd Cir.1999).

Plaintiff argues all these cases are distinguishable on the grounds that this is a foreclosure by the power of sale, while the previously cited cases are for foreclosure by action. (Pl.'s Response to mot. to Dismiss at 14.) Therefore, Plaintiff encourages this Court to adopt the reasoning of *In re Fritz*, 188 B.R. 438 (Bankr. E.D.Wash.1995), rev'd, 225 B.R. 218 (E.D.Wash.1997), or *In re Acosta*, 181 B.R. 477 (Bankr.D.Ariz.1995) and find that a sheriff's deed is void because the sheriff's sale violated 11 U.S.C. § 362. *Id.* at 14. However, I do not find either of the cases persuasive, and even Plaintiff admits that neither of these cases are good precedent. *Id.* at 15. The Eastern District of Washington reversed the decision of *In re Fritz*, and many courts have criticized *In re Acosta*. See *In re Fritz*, 188 B.R. 438 (Bankr.E.D.Wash.1995), rev'd, 225 B.R. 218 (E.D.Wash.1997); *In re Stober*, 193 B.R. 5 (Bkrtcy.D.Ariz.1996); *In re Nagel*, 245 B.R. 657 (D.Ariz.1999).

 Viewing these cases in a light most favorable to Plaintiff, a postponement of a sheriff's sale in accordance with state law does not violate the Bankruptcy Code's automatic stay provision (11 U.S.C. § 362). Therefore, MERS did not violate the automatic stay provision when it postponed the foreclosure sale until February 4, 2004. Thus, I GRANT Defendant's Motion to Dismiss with respect to Plaintiff's claim under 11 U.S.C. § 362.

## D. Requirements of the Foreclosure Statute

Plaintiff claims that the foreclosure auction was invalid because (1) the notice of the foreclosure published in the Detroit Legal News incorrectly described Plaintiff's gender; and (2) MERS did not properly adjourn the sheriff's auction. (Pl.'s Response to Mot. to Dismiss at 10.)

### 1. Description of the Mortgagor

 Under Michigan law statutory foreclosures should not be set aside without "some very good reasons [ .... ]" *Detroit Trust Co. v. Agozzinio*, 280 Mich. 402, 406, 273 N.W. 747 (Mich.1937); *quoting Markoff v. Tournier*, 229 Mich. 571, 201 N.W. 888 (Mich.1925); *see also United States v. Garno*, 974 F.Supp. 628, 633 (E.D.Mich.1997). If a foreclosure sale occurs "without fraud, and is fairly conducted, after proper notice, and is struck off to a third person," then a party must present a strong case for a court to set the foreclosure sale aside. *Id.* at 405–6. Courts should not disregard the notice statute's positive requirements, however, "slight or inconsequential" mistakes are insufficient to void a foreclosure sale. *Guardian Depositors' v. Keller*, 286 Mich. 403, 412, 282 N.W. 194 (1938); citing *Lau v.Scribner*, 197 Mich. 414, 163 N.W. 914 (Mich.1917).

 Michigan law requires that a notice of foreclosure by advertisement include the following:

(a) The names of the mortgagor, the mortgagee, and the foreclosing assignee of a recorded assignment of the mortgage.

(b) The date of the mortgage and the date the mortgage was recorded.

(c) The amount claimed to be due on the mortgage on the date of the notice.

(d) A description of the mortgaged premises that substantially conforms with a description contained in the mortgage.

(e) For a mortgage executed on or after January 1, 1965, the length of the redemption period as determined under section 3240.

M.C.L. § 600.3212(a)-(e).

Plaintiff alleges that the notice of the foreclosure published in the Detroit Legal News only incorrectly described Plaintiff's gender and, therefore, the notice of foreclosure was invalid. The notice of foreclosure does refer to Plaintiff as "a single woman" instead of "a single man." (Pl.'s Am. Compl. Ex. E.) However, Michigan law does not require that the notice of foreclosure state the mortgagor's gender. Worthy also does not cite any cases that find that a mortgagor's gender should be included in a notice of foreclosure. Plaintiff argues that the notice is fundamentally flawed because of "the emphasis placed on the dower right in Michigan title law [. . . .]" (Pl.'s Response to Mot. to Dismiss at 11.) However, the Michigan dower right does not even apply in this case because Plaintiff is a man. Furthermore, Michigan law does not require that the foreclosure notice include a mortgagor's gender, therefore, even viewing this statute in a light most favorable to Plaintiff, I believe that a misstatement of a mortgagor's gender in a foreclosure notice is an inconsequential mistake.

### 2. *Proper Foreclosure Sale Adjournment*

■ Plaintiff alleges that the Wayne County Sheriff's Department did not post a Notice of Adjournment for the weeks between October 29, 2003, and January 27, 2004, and the procedures were not properly followed for adjourning the foreclosure auction. (Pl.'s Response to Mot. to Dis-

miss at 13.) Therefore, Plaintiff claims that this Court should declare that the foreclosure auction is void. *Id.* at 13.

Under Michigan law a sheriff may adjourn a foreclosure sale by:

[ . . . ] posting a notice of such adjournment before or at the time of and at the place where said sale is to be made and if any adjournment be for more than 1 week at one time, the notice thereof, appended to the original notice of sale shall also be published, the first publication to be within 10 days of the date from which the sale was adjourned and thereafter once in each full secular week during the time for which such sale shall be adjourned.

M.C.L. § 600.3220. The foreclosure sale notice of adjournment that postponed the hearing from the originally scheduled date of October 22, 2003 to October 29, 2003, was published. (Pl.'s Response to Mot. to Dismiss at 13.) The parties agree that no later notices were published.

■ Plaintiff argues that Defendant did not properly adjourn the foreclosure auction because:

[1] There is no publication in the Detroit Legal news within 10 days from October 29, 2003 which would allow an adjournment beyond one week at a time. [2] There are no records that indicate that MERS made a request to Wayne County Sheriff's Department to adjourn the foreclosure sale for the weeks between October 29, 200[3] and January 27, 2004.[3] There are no records that indicate the Wayne County Sheriff's Department posted a Notice of Adjournment for the weeks between October 29, 200[3] and January 27, 2004.

(Pl.'s Response to Mot. to Dismiss at 13.) Under the law, a party who publishes an initial notice of adjournment may continue to adjourn a foreclosure sale from week to

week without having to republish a notice of the adjournment every week. John G. Cameron, Jr., Michigan Real Property Law § 18.77, p. 735 (2d ed.1993). While the parties disagree about whether Plaintiff contested the adjournment of the foreclosure sale from week-to-week, even if Defendant failed to comply with the foreclosure notice statute, I would not have sufficient grounds to invalidate the foreclosure sale, because of a lack of prejudice.

In *Jackson Inv. Corp. v. Pittsfield Prod, Inc.,* the Michigan Court of Appeals held:

We hold that a defect in notice renders a foreclosure sale voidable. [ . . . ] Such a holding also allows for an examination of whether any harm was caused by the defect. In situations where it is evident that no harm was suffered, in that the mortgagor would have been in no better position had notice been fully proper and that the mortgager lost no potential opportunity to preserve some or any portion of his interest in the property, we see little merit in the rule of law which [the mortgagor] advocates. Such a rule would automatically nullify the sale without regard to consideration of the intervening interests of the other parties. We conclude that the trial court correctly held that the notice defect rendered the sale voidable and not void.

162 Mich.App. 750, 755–756, 413 N.W.2d 99 (Mich.App.1987) (the defect in that case was that the interval between the date of the first published notice and the date of the sale was twenty-three days, five days less than the circuit court construed was required by statute). In *Jackson Inv. Corp.* five months had passed between the foreclosure sale and the Plaintiff's filing of the complaint. *Id.* at 756, 413 N.W.2d 99. The plaintiff, in *Jackson Inv. Corp.,* did not attempt to redeem the subject property during the redemption period and the purchaser of the property at the foreclosure sale relied on the apparent validity of the foreclosure sale to protect its interests

in the property. *Id.* at 757, 413 N.W.2d 99. The Michigan Court of Appeals found that based on these grounds there were insufficient grounds to invalidate the foreclosure sale.

Similar to *Jackson Inv. Corp.,* Plaintiff let several (six) months pass after the foreclosure sale before filing a complaint. (Reply Br. in Supp. of Mot. to Dismiss at 5.) Furthermore, Plaintiff never tendered any money to redeem the property. *Id.* at 5. Therefore, based on the reasoning of the Michigan Court of Appeals in *Jackson Inv. Corp.,* 162 Mich.App. 750, 413 N.W.2d 99, even if Plaintiff proved MERS failed to comply with the foreclosure notice statute, there are insufficient grounds upon which this Court could invalidate the foreclosure sale. Thus, I GRANT Defendant's Motion to Dismiss on the claim that the foreclosure sale was invalid.

### III. CONCLUSION

Plaintiff fails to state a claim under TILA or SMLA. Furthermore, the law bars Plaintiff's claim that the foreclosure sale was invalid. Thus, I GRANT Defendant's Motion to Dismiss on all counts.

**IT IS SO ORDERED.**