NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0122n.06

No. 13-1699

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 11, 2014
DEBORAH S. HUNT, Clerk

JELANI JABARI AND LESSIE E. JABARI )
    Plaintiffs-Appellants, )
                             )
v.                               )
                             ) ON APPEAL FROM THE UNITED
FANNIE MAE AND BANK OF AMERICA, ) STATES DISTRICT COURT FOR THE
N.A.                            ) EASTERN DISTRICT OF MICHIGAN
    Defendants-Appellees. )
                             )
                             )
                             ) **OPINION**
                             )

Before: MERRITT, BOGGS, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** "Home is a notion that only nations of the homeless fully appreciate and only the uprooted comprehend," American novelist Wallace Stegner once wrote. This is a case about an uprooting, as it deals with one of the roughly seven million homes sold in foreclosure since the foreclosure crisis began in 2007. *See* Adam J. Levitin, *The Paper Chase: Securitization, Foreclosure, and the Uncertainty of Mortgage Title*, 63 Duke L.J. 637, 639 (2013). Jelani and Lessie Jabari bought their home on Greenview Road in Detroit in 1997. In 2003 they mortgaged the house for $145,000. They defaulted. Bank of America[1] initiated foreclosure proceedings and, on April 6, 2011, purchased the Jabaris' home at

---

[1] The initial loan came from Quicken Loans, with Mortgage Electronic Registration Systems (MERS), Quicken's nominee, holding the mortgage. On November 5, 2010, MERS assigned the mortgage to BAC Home Loans Servicing (which was once known as Countrywide Home Loans Servicing). BAC merged with Bank of America, and the mortgaged passed to Bank of America.

1

a sheriff's sale. Bank of America later quitclaimed the property to Fannie Mae, who commenced eviction proceedings on November 7, 2011. The Jabaris filed suit on November 17, roughly seven months after the sheriff's sale, challenging the foreclosure on the grounds of "quiet title," "unjust enrichment," violation of Michigan's non-judicial foreclosure statute, "wrongful foreclosure," and "deceptive act and/or unfair practice." The district court dismissed the suit pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure and denied the Jabaris' subsequent motion for reconsideration. We affirm.

We review 12(b)(6) rulings de novo, construing the complaint in the light most favorable to the plaintiffs and accepting all allegations as true. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). We will allow a claim to proceed as long as the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But "the Rules require that we not rely solely on labels in a complaint, but that we probe deeper and examine the substance of the complaint." *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001); *Bandy v. Fifth Third Bank*, 519 F. App'x 900, 902 (6th Cir. 2013). We review a denial of a motion for reconsideration for abuse of discretion. *Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003).

The timing of the Jabaris' suit is crucial. After a sheriff's sale, Michigan provides mortgagors a six-month redemption period during which the mortgagor can retain her legal interest in the foreclosed property. After the redemption period concludes, "the mortgagor's

2

legal rights in the property vanish and can only be restored by a lawsuit pleading 'fraud, accident, or mistake.'" *Block v. BAC Home Loans Servicing L.P.*, 520 F. App'x 339, 340 (6th Cir. 2013) (quoting *Senters v. Ottawa Sav. Bank, FSB*, 503 N.W.2d 639, 643 (Mich. 1993)). Thus, courts have the power to set aside the Jabaris' statutory foreclosure. But because the Jabaris sued after the redemption period ended, they must make out "a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting [the] foreclosure sale aside." *Sweet Air Inv., Inc. v. Kenney*, 739 N.W.2d 656, 659 (Mich. Ct. App. 2007) (quoting *United States v. Garno*, 974 F.Supp. 628, 633 (E.D. Mich. 1997)). The alleged defect must also have actually prejudiced the Jabaris—the Jabaris "must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statue." *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 361 (6th Cir. 2013) (quoting *Davenport v. HSBC Bank USA*, 739 N.W.2d 383 (Mich. Ct. App. 2007)); *see also El-Seblani v. IndyMac Mortg. Servs.*, 510 F. App'x 425, 431 (6th Cir. 2013).

Although the Jabaris' complaint alleges a sloppy mortgage process where "process" is almost fictitious—it does not allege facts sufficient to make out even a plausible claim for the kind of serious fraud or irregularity necessary to restore their legal rights in their home. The complaint alleges that Bank of America failed to comply with some of the notice provisions of the non-judicial foreclosure statute relating to the borrower's right to try to negotiate a modification of the mortgage. The complaint also alleges that an affidavit submitted by Bank of America stating that it had complied with the notice provisions was not in fact based on the affiant's personal knowledge.

3

Both of these allegations are themselves plausible—especially given the slipshod nature of the affidavit, with the affiant's name, John T. Harrison, marked by a faded stamp rather than handwritten letters and his "signature" only a curlicue. Indeed, "robo signing," the use of affidavits such as Mr. Harrison's is alleged to be, has resulted in strong action by state and federal regulators and, in some states, courts invalidating foreclosure sales. *See, e.g. U.S. Bank Nat'l Ass'n v. Ibanez*, 941 N.E.2d 40 (Mass. 2011).

But, as we must apply Michigan law, these allegations are not sufficient to plausibly meet the "high standard" necessary for the Jabaris' case to continue because neither supports an inference that the Jabaris were actually prejudiced by these errors. *Conlin*, 714 F.3d at 360. The complaint states that, despite the alleged lack of notice, the Jabaris attempted to negotiate a modification of their mortgage. The Jabaris, thus, were not prejudiced by the alleged lack of notice. They attempted to modify the mortgage; it was all they could have done. *See Kim v. JPMorgan Chase Bank, N.A.*, 825 N.W.2d 329, 338 (Mich. 2012); *see also Worthy v. World Wide Fin. Servs., Inc.*, 347 F. Supp. 2d 502, 511 (E.D. Mich. 2004). For the same reasons, we conclude that the affidavit, whatever its defects, could not have prejudiced the Jabaris.[2]

We may never know what really happened between the Jabaris and Bank of America. As the district court intimated, perhaps a better complaint would have told a fuller story, one that met the required standard by alleging a strong case of fraud, accident, or mistake. But Michigan's law, which strongly favors "giving security and finality to purchasers of foreclosed

---

[2]Which is not to say that such an affidavit could not form the basis for a claim under a different set of alleged facts. *See Gorki v. CTX Mortg. Co.*, No. 12-CV-12250, 2013 WL1316931, at *5–6 (E.D. Mich. Mar. 29,2013) (granting plaintiff leave to amend fraud claim based on robo-signing).

4

properties," is strict, even viewed through the lenient lens of the Federal Rules of Civil Procedure. *Conlin*, 714 F.3d at 359. We therefore **AFFIRM**.